MID–CONTINENT CASUALTY,
Appellant,

v.

UNITED STATES FIRE INSURANCE
COMPANY, Appellee.

No. 13–97–432–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 12, 1999.

Scott Tessmer, Mattingly & Marsh, Houston, for Appellant.

Robert O. Lamb, Belinda A. Vrielink, Thompson, Coe, Cousins & Irons, Dallas, for Appellee.

Before Justices DORSEY, HINOJOSA, and KENNEDY.[1]

## OPINION

NOAH KENNEDY, Justice (Retired).

Southbend Municipal Utility District (MUD) had insurance coverage from both appellant, Mid–Continent Casualty (Mid–Continent) and appellee, U.S. Fire Insurance Company (U.S. Fire). In 1992 and 1993 two lawsuits were filed against MUD by plaintiffs who claimed that they were harmed by drinking water furnished to them by MUD. One suit was filed by Allen and Karen Bishop and the other by George and Pennye Leon, all of whom are residents of Southbend subdivision which receives utility services from Southbend MUD. Mid–Continent successfully defended MUD in both suits, having first demanded that U.S. Fire participate in the defense. US Fire declined, citing a clause in their policy with MUD which exempted MUD from coverage in a situation such as this. Mid–Continent sued U.S. Fire for expenses incurred in the defense of these two lawsuits.

■ The trial court granted summary judgment to U.S. Fire based upon the pollution exclusion contained in their policies issued to MUD, which reads:

This insurance does not apply to:

1. "Bodily injury" or "Property damage" arising out of the actual, alleged or threatened discharge, disbursal, release or escape of pollutants:

   (a) at or from premises you own, rent or occupy;

   (b) at or from any site or location used by you or for you by others for the handling, storage, disposal, processing or treatment of waste;

   (c) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you by any person or organization for whom you may be legally responsible; or

   (d) at or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

   (i) if the pollutants are brought on or to the site or location in connection with such operations; or

   (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize the pollutants.

2. Any loss, cost, expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Appellant's brief brings five points of error. Point one alleges error in granting U.S. Fire's motion for summary judgment. Point two alleges error in granting the summary judgment "for failure to plead and prove applicability of an exception." Point three alleges error because U.S. Fire failed to meet the burden of proof necessary to establish applicability of specific exclusion. We will consider the three points jointly.

---

1. Retired Justice Noah Kennedy assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

■ Both parties to this appeal cite the "eight corners" rule [2] as controlling the matter of exclusion. Under this rule, an insurer's duty to defend is determined by the allegations in the pleadings and the language of the insurance policy. *National Union Fire v. Merchants Fast Motor Lines,* 939 S.W.2d 139, 141 (Tex.1997). Summary judgment was upheld in a case where the policy contained an identical provision to the one found in the policy before us. *See Northbrook Indem. v. Water Dist. Management Co.,* 892 F.Supp. 170, (S.D.Tex.1995).

■ We reject appellant's argument that U.S. Fire's exclusion requires pollutants to originate from a site owned or otherwise under the control of Southbend MUD. We quote with approval from appellee's brief:

> Everyone of the four petitions before the trial court complains of "pollution" and "contamination" released in drinking water provided by Southbend MUD to its customers.... Furthermore, the petitions in the underlying cases consistently refer to Southbend MUD's obligation to design, construct and operate "facilities" to guarantee safe drinking water. Mid–Continent recognizes that also. Thus subsection (a) of the exclusion applies, for Southbend MUD obviously owned, rented or at least occupied, those drinking water facilities.

> Subsection (d) also applies because the underlying petition alleges that either Southbend MUD itself or ECO Resources operated the facilities on behalf of Southbend MUD, and was "charged with the responsibility and obligation of testing water, water systems, and purification facilities. Furthermore, as a matter of common sense, the polluted or contaminated drinking water had to have been "discharged, disbursed or released" from a site where Southbend MUD or those working on its behalf were "performing operations;" otherwise Southbend MUD could not have provided the drinking water to its plaintiffs.

We find the exclusion to be broad enough to cover the allegations in the petitions of both plaintiffs in the underlying suits. We likewise find no ambiguity in the pollution exclusions in the case before us.

We have examined the pleadings in the two underlying lawsuits. One of these suits alleges negligence. The other alleges negligence and breach of contract. We are of the opinion that there is nothing alleged in either suit that is not covered by the pollutions exclusions cited earlier. We find no issue of fact contained in the suit before us. We overrule points of error one, two, and three. Summary judgment was correctly granted by the trial court.

Point of error four is, "the trial court erred in overruling Mid–Continent's objection to U.S. Fire's summary judgment evidence." Point of error five complains of the trial court's denial of a continuance, the argument being that more time was needed by appellant to gather evidence in opposition to appellee's motion for summary judgment. In view of our holding that summary judgment was correctly entered based upon the pleadings in the underlying cases and the insurance policy itself, it is not necessary that we write on points four and five. Tex.R.App.P. 47.1.

We AFFIRM the judgment of the trial court.

---

2. Also called the "complaint allegation rule."