NUMBER 13-99-006-CV 



COURT OF APPEALS 

THIRTEENTH DISTRICT OF TEXAS 

CORPUS CHRISTI 

___________________________________________________________________ 



EVERETT CARROLL AND BETTY 

CARROLL, INDIVIDUALLY AND 

D/B/A CARROLL WATER WELL 

SERVICE, Appellants, 



v. 



SANTIAGO CASTILLO, 

PROFESSIONAL INSURANCE 

AGENTS, INC. AND LUMBERMENS 

MUTUAL CASUALTY COMPANY, Appellees. 

___________________________________________________________________ 



On appeal from the 267th District Court 

of Jackson County, Texas. 

___________________________________________________________________ 



O P I N I O N 



Before Justices Dorsey, Chavez, and Rodriguez 

Opinion by Justice Dorsey 

This case involves construction of an insurance policy. Everett Carroll, appellant,
operates a business called Carroll Water Well Service, which drills new water wells and
services and repairs existing wells. He obtained commercial automobile liability insurance
coverage for his 1982 Ford 5-Ton drilling rig through Lumbermens Mutual Casualty Company.
The issue in this case is whether that policy covered injuries sustained by an employee of
Carroll while using the rig to drill a new water well for a customer. 

Carroll hired Santiago Castillo to help him drill a water well. While operating the
drilling equipment on Carroll's 5-Ton drilling rig, Castillo sustained injury to his thumb
that eventually required amputation. Carroll is not a subscriber to workers compensation
insurance. Castillo sued Carroll, both in his individual capacity and d/b/a Carroll Water
Well Service, for negligent operation of the drilling rig. Lumbermens denied coverage, and
Carroll sued it as a third party defendant. Lumbermens counterclaimed against Carroll and
sought declaratory judgment. To that end, Lumbermens sought summary judgment contending
that: 

(1) Castillo's injuries did not arise out of the ownership, maintenance or use of an
automobile, and were thus not covered under its policy; 



(2) Castillo's injuries arose out of the operation of "mobile equipment," and
thus coverage is specifically excluded by the policy; 



(3) Castillo's injuries arose out of and in the course of a fellow employee's
employment, and thus coverage is specifically excluded by the policy; and 



(4) Castillo's injuries arose out of and in the course of his employment by Carroll,
and thus coverage is specifically excluded by the policy. 



The trial court granted summary judgment in favor of Lumbermens on unspecified grounds,
and dismissed all claims against Lumbermens. Carroll appeals the order granting summary
judgment and severing the action involving Lumbermens, attacking all grounds in Lumbermens
summary judgment motion and also contending that genuine issues of material fact preclude
summary judgment in this case. 

Standard of Review 

We review the trial court's grant of summary judgment de novo, considering the evidence
presented by both sides in determining the questions presented and the judgment that the
district court should have rendered. Natividad v. Alexis, Inc., 875 S.W.2d 695,
699 (Tex. 1994). A party seeking summary judgment must establish its right to summary
judgment on all matters expressly presented to the trial court by conclusively proving all
elements of its cause of action or defense as a matter of law. Tex. R. Civ. P. 166a(c); Rhone-Poulenc,
Inc. v. Steele, 997 S.W.2d 217, 222-23 (Tex. 1999); Walker v. Harris, 924
S.W.2d 375, 377 (Tex. 1996). If the defendant is movant, he must either disprove at least
one essential element of plaintiff's cause of action or establish all the elements of an
affirmative defense as a matter of law. Science Spectrum, Inc. v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997); Vela v. Gomez, 4 S.W.3d 911, 913 (Tex. App.--Corpus
Christi 1999, no pet. h.). In deciding whether there is a disputed material fact issue
precluding summary judgment, evidence favorable to the non-movant is taken as true, and
every reasonable inference must be indulged and all reasonable doubts resolved in his
favor. American Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Vela,
4 S.W.2d at 913. When the trial court's order granting summary judgment does not specify
the grounds upon which summary judgment is granted, we will affirm the judgment if it is
supported by any grounds put forth by the movant. Bradley v. State ex rel White,
990 S.W.2d 245, 247 (Tex. 1999). 

Insurance contracts are governed by the same rules of construction as other contracts,
which require the courts to strive to give effect to the written expressions of the
parties' intent. See Grain Dealers Mut. Ins. Co. v. McKee, 943 S.W.2d 455, 458
(Tex. 1997); Duzich v. Marine Office of America Corp., 980 S.W.2d 857, 865 (Tex.
App.--Corpus Christi 1998, pet. denied). We construe all parts of the policy together to
effectuate the parties' intent. See American-Amicable Life Ins. Co. v. Lawson,
419 S.W.2d 823, 826 (Tex. 1967); Duzich, 980 S.W.2d at 865. Whether a contract is
ambiguous is a question of law that must be decided by examining the contract as a whole
in light of the circumstances present when the contract was entered. Grain Dealers
Mut. Ins. Co., 943 S.W.2d at 458 (quoting Columbia Gas Transmission Corp. v. New
Ulm Gas, Ltd., 940 S.W.2d 587 (Tex. 1996)). A contract is unambiguous as a matter of
law if it can be given a definite or certain legal meaning. Grain Dealers Mut. Ins.
Co., 943 S.W.2d at 458. On the other hand, if an insurance contract is subject to
more than one reasonable interpretation, the contract is ambiguous and the interpretation
that most favors coverage for the insured will be adopted. Id.; cf. Duzich,
980 S.W.2d at 865 (stating that if the policy remains ambiguous after applying the rules
of interpretation, courts should construe policy in a manner that favors coverage). 

An insurance company's duty to defend is determined by the "eight corners
rule." National Union Fire v. Merchants Fast Motor Lines, 939 S.W.2d 139,
141 (Tex. 1997); Mid-Continent Cas. v. U.S. Fire Ins. Co., 1 S.W.3d 251, 253
(Tex. App.--Corpus Christi 1999, no pet. h.). Under this rule, the duty to defend is
determined by looking solely at the allegations in the pleadings and the language of the
policy. National Union Fire, 939 S.W.2d at 141; Mid-Continent Cas., 1
S.W.3d at 253. The allegations in the petition should be given a liberal interpretation,
and any doubt should be resolved in favor of the insured. National Union, 939
S.W.2d at 141. 

Ownership, Maintenance or Use 

First, Lumbermens argues that Castillo's injuries did not arise out of the
"ownership, maintenance or use" of an automobile covered by the policy.
Lumbermens reasons that because Castillo's injury occurred while he was drilling rather
than operating the vehicle in some other manner, the vehicle was not in "use" as
contemplated by the policy. 

The policy in question is a Business Automobile Policy, which lists Carroll Waterwell
Service as its insured. Several vehicles are covered on this policy, including the 1982
Ford 5-Ton Drilling Rig, a 1974 International 3-Ton Water Truck, two Shopbuild Trailers, a
1989 Longhorn Trailer, a 1988 GMC -Ton pickup, two -Ton extended-cab light trucks, and a
1986 Ford 1-Ton light truck. The relevant provision of the insurance policy provides that
the insurance company: 

. . . will pay all sums an "insured" legally must pay as damages because of
"bodily injury" or "property damage" to which this insurance applies,
caused by an "accident" and resulting from the ownership, maintenance or use of
a covered "auto." 



We have the right and duty to defend any "suit" asking for these damages.
However, we have no duty to defend "suits" for "bodily injury" or
"property damage" not covered by this Coverage form. We may investigate and
settle any claim or "suit" as we consider appropriate. Our duty to defend or
settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment
of judgments or settlements. 



The parties do not dispute that the drilling rig was a covered auto under the policy,
nor that the policy was effective when the incident occurred. 

For liability to arise out of the use of a vehicle, a causal connection or relation
must exist between the accident or injury and the use of the motor vehicle. Mid-Century
Ins. Co. of Tex. v. Lindsey, 997 S.W.2d 153, 156 (Tex. 1999). The
"use" must be use of the vehicle as a vehicle, and not simply as an
article of property. Id. A person's intent and conduct are examined together to
determine whether he is using a vehicle as a vehicle. Id. The Texas Supreme Court
recently addressed the issue of what is meant by "use" of a covered vehicle in Mid-Century
Ins. Co. v. Lindsey, 997 S.W.2d 153 (Tex. 1999). 

In Mid-Century, the question was whether a boy's climbing in the back window
of a pickup truck causing a gun in the gun rack to discharge was "use" of the
vehicle as contemplated by the insurance policy. Mid-Century Ins. Co., 997 S.W.2d
at 154, 156-48. In finding that the accident did result from the use of the vehicle, the
Supreme Court used the following factors to aid in determining whether an injury arises
out of the use of a motor vehicle for purposes of auto liability insurance coverage: 

For an injury to fall within the "use" coverage of an automobile policy: 

(1) the accident must have arisen out of the inherent nature of the automobile, as
such, 



(2) the accident must have arisen within the territorial limits of an automobile, and
the actual use must not have terminated, and 



(3) the automobile must not merely contribute to cause the condition which produces the
injury, but must itself produce the injury. 



Mid-Century Ins. Co. of Texas, 997 S.W.2d at 157 (citing Couch on Insurance
and Appleman's Insurance Law and Practice.) The court expressly refused to adopt these
factors as an absolute test, but found them helpful in focusing the analysis in these
types of cases. Id. The court pointed out that the fundamental issue is always
"what coverage is intended to be provided by insurers and acquired and shared by
premium-payers." Id. at 158. 

The difficult question in the present case is whether the policy in question was
intended to cover the vehicle only during use "as an automobile as such," and
not during use as a drilling rig. The covered vehicle is listed as a "drilling
rig," and no specific exclusion states that the policy does not cover the vehicle
when it is used as a drilling rig as opposed to used as a vehicle. Thus, we find that the
term "use" as contained in the policy is ambiguous. While this accident may not
have stemmed from the "use of an automobile or vehicle, as such," it certainly
resulted from the "use of a drilling rig, as such." We are mindful of the maxim
that any ambiguities or doubts should be resolved in favor of the policyholder. See
Grain Dealers Mut. Ins. Co., 943 S.W.2d at 458; Duzich, 980 S.W.2d at 865. A
reasonable construction of the policy is that a properly foreseen and intended use of the
insured vehicle was as a drilling rig. Because the injury occurred while it was so being
used, summary judgment was not proper on this ground. 

Mobile Equipment Exclusion 

The second ground contained in Lumbermens' motion is that Castillo's injuries are
excluded from coverage under the operation of mobile equipment exclusion. The policy
states that it does not apply to "'bodily injury' or 'property damage' arising out of
the operation of any equipment listed in paragraphs 6.b. and 6.c. of the definition of
'mobile equipment.'" Section 6b lists "cherry pickers and similar devices
mounted on automobile or truck chasis and used to raise or lower workers." Section 6c
lists "air compressors, pumps and generators, including spraying, welding, building
cleaning, geophysical exploration, lighting or well servicing equipment." Thus, by
its plain language, the policy excludes injuries caused by the operation of well servicing
equipment. The question then becomes whether Castillo was injured from the operation of
well servicing equipment. 

In response, Carroll contends that the drilling rig at issue in this case was used for
drilling wells, but never for servicing wells. Thus, he argues that the exclusion does not
apply because Castillo was drilling and not servicing a well at the time of the injury.
Carroll attached his affidavit to his response to Lumbermens' motion for summary judgment,
which stated: 

The 1982 Ford 5-Ton Drilling Rig employed in the business of Carroll Water Well Service
is not used in any way to service water wells and is not utilized as water well servicing
equipment, and was not used as such on the day Mr. Castillo worked with me in drilling the
new water well on May 21, 1994. Servicing water wells is a totally separate function from
drilling water wells and servicing water wells utilizes a smaller service truck,
specifically a 1986 Ford F-350 1-Ton Truck. Thus, when one of my customers needs an
existing water well serviced or repaired, the 1986 Ford F-350 1-Ton truck is employed to
perform those tasks. If a customer needs a new water well drilled, the 1982 Ford 5-Ton
Drilling Rig is employed to accomplish those drilling tasks. Throughout the period of time
Mr. Castillo assisted me . . . , at no time did we engage in servicing any water wells nor
did we utilize well servicing equipment. . . . 



Additionally, Carroll attached the affidavits of George Calvin Bagnall and Lee A.
Durst, both licensed professional engineers. Both stated that the 1982 Ford 5-Ton drilling
rig is not well servicing equipment, but is used only for purposes of drilling water
wells. Also, both stated that the term "geophysical exploration" is not commonly
utilized in connection with drilling water wells, and that their professional opinions
were that Carroll was not operating geophysical exploration equipment, nor was he
conducting geophysical explorations activities at the time of Castillo's accident.
(Injuries caused by operating geophysical exploration equipment were also excluded by the
policy.) 

We find that a genuine issue of material fact exists regarding whether the drilling rig
and, specifically, the part of the drilling rig that Castillo was operating at the time of
the accident, is "well servicing equipment," or "geophysical exploration
equipment" as contemplated by the insurance policy. Again, because ambiguity should
be construed in favor of coverage, we affirm Carroll's second point of error challenging
the summary judgment. 

Employer's Liability Exclusion 

Next, Lumbermens contends that coverage was excluded under the "Employee
Indemnification and Employer's Liability" exclusion contained in the policy. That
provision states that the insurance does not apply to bodily injury to an employee of the
insured arising out of and in the course of employment by the insured. The next part of
that section states that the exclusion applies (1) whether the insured may be liable as an
employer or in any other capacity; and (2) to any obligation to share damages with or
repay someone else who must pay damages because of the injury, but does not apply
to bodily injury to domestic employees not entitled to workers compensation benefits or to
liability assumed by the "insured" under an "insured contract." 

By its terms, this exclusion does not apply to bodily injury to domestic employees not
entitled to workers compensation benefits. Mr. Castillo is not entitled to workers
compensation benefits because Carroll is not a subscriber to the program. In addition, the
term "domestic employee" is ambiguous and incapable of precise determination for
summary judgment purposes. "Domestic employee" could mean an employee of Carroll
Water Well Service who works in a home, such as a cook, maid, or housekeeper; or it could
mean an employee who works in the United States as contrasted with one who works abroad in
a foreign country. Mr. Castillo qualifies as a local employee of the water well service
who does not qualify for workers compensation benefits even though he is not employed in
the Carroll's household. 

We find that clause to be ambiguous on its face, which would require a construction
favoring coverage. Accordingly, we affirm appellant's third point and hold that the
summary judgment is not supportable on this ground. 

"Fellow Employee" Exclusion 

The last ground upon which the summary judgment could be supported for Lumbermens is
that coverage for Castillo's injuries is excluded by the "fellow employee"
clause of the policy. That clause states that the insurance does not apply to bodily
injury to any fellow employee of the insured arising out of and in the course of the
fellow employee's employment. "Fellow employee" is not defined in the policy.
This court has stated that "[f]ellow servants are those workers who serve the same
master, work under the same control, derive their authority and compensation from the same
common source, and engage in the same general business." Funk Farms, Inc. v.
Montoia, 736 S.W.2d 803, 806 (Tex. App.--Corpus Christi 1987, writ ref'd n.r.e.)
(citing H. & T.C. Railway Co. v. Rider, 62 Tex. 267, 269 (1884)). 

Carroll was either an employer or a contractor that hired Castillo to perform work for
him. Carroll was doing business in the capacity of Carroll Well Services. Carroll was not
a "fellow employee" of Castillo to meet the exclusion of the policy. We construe
the term to be in favor of coverage. Accordingly, we sustain appellants' fourth point. 

Because we have sustained all of appellant's challenges to the summary judgment and
held that it is insupportable on any ground, we reverse the trial court's judgment and
remand for further proceedings consistent with this opinion. 



______________________________ 

J. BONNER DORSEY, 

Justice 



Do not publish. 

Tex. R. App. P. 47.3(b). 



Opinion delivered and filed 

this 6th day of April, 2000.