**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

AUTO-OWNERS INSURANCE COMPANY,
            *Plaintiff-Appellee,*

v.

DEBRA J. POTTER; ROBERT F. POTTER;
NICHOLAS E. PIGGOTT; KARIN
PIGGOTT; EDWARD F. FITZGERALD;
KAREN L. FITZGERALD; SUSAN
WILLIAMS; BRIAN EASON; JANET
EASON; CHARLES N. REGISTER;
NANCY P. REGISTER; DOUGLAS
BAREFOOT; ANGELA BAREFOOT; JOHN
JOSEPH BIANCHINO; KAREN MARIE
BIANCHINO; DANIEL BLACKMAN;
HOLLY BLACKMAN; RONALD E. BRAY;
SUSAN M. BRAY; CLYDE CORSON;          No. 03-1457
MARY CORSON; RICHARD AL COX;
BARBARA S. BOOB; JAMES W.
DELUCA; MARY H. DELUCA; KENNETH
DEMOSS; REGINA DEMOSS; DAVID R.
DIETZ; HELEN L. DIETZ; DIANE
DILLON; JESSE M. DINGLE; LYNN K.
DINGLE; DAVID M. GOODWYN;
VALERIE C. WASHINGTON; JOYCE
GRIFFIN-KEENE; SABOOR HAKEM;
WENDY D. HAKEM; JOHNNY M.
HUMPHREY; SUSAN V. HUMPHREY;
DWAUN A. HUMPHRIES; KRISTY G.
HUMPHRIES; GREGORY J. JONES;
KYMBERLY A. JONES; MILTON WAYNE
KING, SR.; JOYCE S. KING;

DAVID SAMUEL LEINFELDER; SANDRA
IVESTER LEINFELDER; STEPHANIE
EDWARDS MASSENGALE; MICHAEL R.
MCKAY; JILL L. MCKAY; ROBERT
WILLIAM MOORES; VICTORIA MORGAN
MOORES; ROBERT P. NENNO; CARINE
M. NENNO; STEVEN D. PARKER;
KAREN D. PARKER; JOSEPH J. RACHIS;
SUSAN T. RACHIS; MARK T. RADER;
SUE N. RADER; RAMIRO ROBLES, JR.;
PATRICIA BEATRICE ROBLES; JIHAD A.
SHAWWA; HOWAYDA SHAWWA; JOHN
F. STEHMAN; MICHELLE A. STEHMAN;
AMANDA TALLEY; STEPHEN TURNER;
LOLITA FIELDS; SHAWN M. WAGNER;
JODI A. WAGNER; CATHY WHITE;
DALE S. WIGGINS; MARY WIGGINS;
ANJANETTE IRENE WOOTEN,
          *Defendants-Appellants,*

                  and

WHITEWOOD PROPERTIES,
INCORPORATED, d/b/a Neuse Crossing
Utilities Company, d/b/a Neuse
Crossing Utilities Company
Properties; JAMES D. ADAMS, JR.,
                    *Defendants,*

                  and

THE HARLEYSVILLE INSURANCE
COMPANIES,
          *Third party Defendant.*

AUTO-OWNERS INSURANCE COMPANY,
*Plaintiff-Appellee,*

v.

WHITEWOOD PROPERTIES,
INCORPORATED, d/b/a Neuse Crossing
Utilities Company, d/b/a Neuse
Crossing Utilities Company
Properties; JAMES D. ADAMS, JR.,
*Defendants-Appellants,*

and

DEBRA J. POTTER; ROBERT F. POTTER;
NICHOLAS E. PIGGOTT; KARIN
PIGGOTT; EDWARD F. FITZGERALD;
KAREN L. FITZGERALD; SUSAN
WILLIAMS; BRIAN EASON; JANET
EASON; CHARLES N. REGISTER;
NANCY P. REGISTER; DOUGLAS
BAREFOOT; ANGELA BAREFOOT; JOHN
JOSEPH BIANCHINO; KAREN MARIE
BIANCHINO; DANIEL BLACKMAN;
HOLLY BLACKMAN; RONALD E. BRAY;
SUSAN M. BRAY; CLYDE CORSON;
MARY CORSON; RICHARD AL COX;
BARBARA S. BOOB; JAMES W.
DELUCA; MARY H. DELUCA; KENNETH
DEMOSS; REGINA DEMOSS; DAVID R.
DIETZ; HELEN L. DIETZ; DIANE
DILLON; JESSE M. DINGLE; LYNN K.
DINGLE; DAVID M. GOODWYN;
VALERIE C. WASHINGTON; JOYCE
GRIFFIN-KEENE; SABOOR HAKEM;
WENDY D. HAKEM; JOHNNY M.
HUMPHREY; SUSAN V. HUMPHREY;

No. 03-1543

DWAUN A. HUMPHRIES; KRISTY G.
HUMPHRIES; GREGORY J. JONES;
KYMBERLY A. JONES; MILTON WAYNE
KING, SR.; JOYCE S. KING; DAVID
SAMUEL LEINFELDER; SANDRA IVESTER
LEINFELDER; STEPHANIE EDWARDS
MASSENGALE; MICHAEL R. MCKAY;
JILL L. MCKAY; ROBERT WILLIAM
MOORES; VICTORIA MORGAN MOORES;
ROBERT P. NENNO; CARINE M.
NENNO; STEVEN D. PARKER; KAREN
D. PARKER; JOSEPH J. RACHIS; SUSAN
T. RACHIS; MARK T. RADER; SUE N.
RADER; RAMIRO ROBLES, JR.;
PATRICIA BEATRICE ROBLES; JIHAD A.
SHAWWA; HOWAYDA SHAWWA; JOHN
F. STEHMAN; MICHELLE A. STEHMAN;
AMANDA TALLEY; STEPHEN TURNER;
LOLITA FIELDS; SHAWN M. WAGNER;
JODI A. WAGNER; CATHY WHITE;
DALE S. WIGGINS; MARY WIGGINS;
ANJANETTE IRENE WOOTEN,
                                *Defendants,*

           and

THE HARLEYSVILLE INSURANCE
COMPANIES,
               *Third party Defendant.*

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-01-819-5-BR)

Argued: February 26, 2004

Decided: July 27, 2004

Before LUTTIG, WILLIAMS, and GREGORY, Circuit Judges.

---

Vacated and remanded by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Luttig and Judge Williams joined.

---

**COUNSEL**

**ARGUED:** Jonathan Drew Sasser, ELLIS & WINTERS, L.L.P., Raleigh, North Carolina, for Appellants. Walter Edgar Brock, Jr., YOUNG, MOORE & HENDERSON, P.A., Raleigh, North Carolina, for Appellee. **ON BRIEF:** Kurt J. Olson, Tyler L. Randolph, MAUPIN TAYLOR, P.A., Raleigh, North Carolina; Reed J. Hollander, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Raleigh, North Carolina, for Appellants. John A. Yeager, WILLINGHAM & COTÉ, P.C., East Lansing, Michigan, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

GREGORY, Circuit Judge:

Debra J. Potter and other residents (hereinafter "Potter Appellants") in the Neuse Crossing subdivision in Wake County, North Carolina, brought suit in state court against the housing developer, Whitewood Properties, Inc., d/b/a/ Neuse Crossing Utilities Company, its president and others (collectively "Whitewood") to recover for damage to their homes and persons caused by water allegedly containing contaminants. Appellee Auto-Owners Insurance Company ("Auto-Owners"), Whitewood's insurer, filed an action in federal district court seeking a declaratory judgment that it had no obligation to defend or indemnify Whitewood because of various exclusions in the

insurance policy at issue. The district court granted summary judgment for Auto-Owners, holding that the insurance policy's pollution exclusion clause barred coverage and all duties to defend Whitewood.

The Potter Appellants appeal the grant of summary judgment, contending that the district court incorrectly applied governing North Carolina law, *W. Am. Ins. Co. v. Tufco Flooring E., Inc.*, 409 S.E.2d 692 (N.C. Ct. App. 1991). While we conclude that the district court correctly applied three of *Tufco*'s "four independent" holdings, we find that it erred in failing to properly apply the fourth holding. Therefore, we vacate the district court's grant of summary judgment for Auto-Owners, and we hold that the pollution exclusion clause does not serve as a complete bar to insurance coverage for the Potter Appellants' state court claims. Accordingly, we remand to the district court so that it may consider the scope of the pollution exclusion clause as well as the other exclusions which Auto-Owners argued are applicable in its declaratory judgment action.

I.

Whitewood began developing the Neuse Crossing subdivision in 1987, and formed the utilities company implicated here to provide water and sewer for the development. In March 2001, the Potter Appellants filed suit in state court against Whitewood, alleging that Whitewood provided contaminated water from its four wells, causing the Potter Appellants bodily injury and property damage. According to the Potter Appellants, the water contained excessive concentrations of manganese, iron, calcium, arsenic, barium, chloride, hard water constituents, and total dissolved solids, and such contaminants caused skin problems, adverse health effects, damage to household goods, and diminution of property values. In their state court First Amended Complaint, the Potter Appellants asserted claims for fraudulent and negligent misrepresentation, breach of implied warranty of habitability, trespass, nuisance, negligence, negligence per se, negligent infliction of emotional distress, civil conspiracy, unfair and deceptive trade practices, and medical monitoring.

Whitewood demanded coverage from its insurers, Auto-Owners and the Harleysville Insurance Companies,[1] who had issued White-

---

[1]Harleysville has been dismissed from the action by stipulation.

wood commercial general liability ("CGL") policies for the years in question. Auto-Owners issued a series of nearly identical one-year policies from December 8, 1997 to December 8, 2000. The Auto-Owners policy requires the insurer to pay those sums Whitewood is legally obligated to pay as a result of "bodily injury" or "property damage" caused by an "occurrence" within the scope of the policy's coverage. J.A. 97, 164, 231 (1997-98, 1998-99, 1999-2000 coverage forms, respectively). The "occurrence" at issue is Whitewood's distribution of allegedly contaminated water.

The policy includes two aggregate limits for coverage, a general aggregate limit and a limit for "Products-Completed Operations." "Products-completed operations" are not coverages separate from the CGL; rather, they delineate the CGL's scope of coverage, making clear that insurance coverage continues to apply to work that has been completed. Section V ("Definitions") of the CGL coverage form provides:

> a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> > (1) Products that are still in your physical possession; or
> >
> > (2) Work that has not yet been completed or abandoned.
>
> b. "Your work" will be deemed completed at the earliest of the following times: . . .
>
> > (3) When that part of the work done at a job site has been put to its intended use by a person or organization other than another contractor or subcontractor working on the same project.

J.A. 106, 173, 240 (1997-98, 1998-99, 1999-2000 coverage forms, respectively). In this case, Whitewood's product was water and its operations consisted of providing water to the Potter Appellants.

When Whitewood sought insurance coverage for the damage caused by the alleged contamination, both insurers initially denied coverage. Auto-Owners later agreed to defend Whitewood under a reservation of rights. Subsequent to that agreement, however, Auto-Owners brought this diversity action in federal court, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, seeking a declaration that it was not required to indemnify or defend Whitewood under the CGL policies. In its declaratory judgment action, Auto-Owners asserted seven counts as to why the policy did not provide the coverage sought by Whitewood. The Potter Appellants filed a motion to dismiss the declaratory judgment complaint. The district court converted the Potter Appellants' motion to dismiss into one for summary judgment, and denied that motion. However, the court granted summary judgment on Auto-Owners' declaratory judgment claim, holding that the pollution exclusion clause in Auto-Owners' policies precluded the coverage sought by Whitewood. In so holding, the court did not reach the applicability of any other proffered exclusion.

The CGL's pollution exclusion clause upon which the district court based its holding excludes from CGL coverage:

> (f)(1) "Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
>
>> (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;
>>
>> (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste . . . . or
>>
>> (d) At or from any premises, site or location on which any insured . . . [is] performing operations: . . .
>>
>>> (i) if the pollutants are brought on or to the premises, site or location in connection with such operations . . . or

> (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of pollutants.

J.A. 97-98, 165, 232 (1997-98, 1998-99, 1999-2000 coverage forms, respectively). The court found the pollution exclusion clause unambiguously applied to the events at issue, and barred coverage as well as any duty to defend on the part of the insurer. After the grant of summary judgment, Auto-Owners terminated coverage and ceased its defense under the reservation of rights. The Potter Appellants appeal from the district court's grant of summary judgment, while their action against Whitewood remains pending in state court.

## II.

We review the district court's grant of summary judgment de novo. *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 282 (4th Cir. 2003). Issues of law in dispute are reviewed de novo. *Id.*

In this appeal, we must interpret the terms of an insurance policy as a matter of North Carolina law. The goal of construction of insurance policies, like with all contracts, is to arrive at the intent of the parties when the policy was issued. *Gaston County Dyeing Mach. Co. v. Northfield Ins. Co.*, 524 S.E.2d 558, 563 (N.C. 2000) (citations omitted). The terms of the policy are to be given their ordinary meaning, unless the context indicates a different meaning was intended. *Id.* Furthermore, the terms are to be harmoniously construed and every provision is to be given effect if possible. *Id.*

The meaning of language used in the policy is a question of law. *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 172 S.E.2d 518, 522 (N.C. 1970). If there are doubts or ambiguities in the policy, they must be resolved in favor of the insured. *Pa. Nat'l Mut. Cas. Ins. Co. v. Associated Scaffolders & Equip. Co.*, 579 S.E.2d 404, 406 (N.C. Ct. App. 2003) (citation omitted); *see also Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 378 (N.C. 1986); *accord Gaston County Dyeing*. The insured bears the initial burden of establishing that a loss comes within the scope of a policy's coverage, however, the insurer bears the burden of proving that an exclu-

sion is applicable. *Nationwide Mut. Ins. Co. v. McAbee*, 150 S.E.2d 496, 497-98 (N.C. 1966).

### III.

### A.

The Potter Appellants argue that the district court erred in interpreting state law on pollution exclusion clauses by failing to apply the four independent holdings of the North Carolina Court of Appeals in *W. Am. Ins. Co. v. Tufco Flooring E., Inc.*, 409 S.E.2d 692 (N.C. Ct. App. 1991), *review allowed*, 413 S.E.2d 555 (N.C. 1992), *and review denied as improvidently granted*, 420 S.E.2d 826 (N.C. 1992), *and overruled on other grounds by Gaston County Dyeing*, 524 S.E.2d 558. We find, as both parties largely acknowledge, that there is no clearly controlling precedent from the North Carolina Supreme Court that resolves the instant case, thus "our judicial chore is to determine the rule that the North Carolina Supreme Court would probably follow, not fashion a rule which we, as an independent federal court, might consider best." *Kline v. Wheels by Kinney, Inc.*, 464 F.2d 184, 187 (4th Cir. 1972) (internal quotation marks and citation omitted). In doing so, where *Tufco* is directly on point, we are obliged to follow it. *See, e.g.*, *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236-37 (1940) ("[A] federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable."); *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002-03 (4th Cir. 1998) (stating "only if the decision of a state's intermediate court cannot be reconciled with state statutes, or decisions of the state's highest court, or both, may a federal court sitting in diversity refuse to follow it") (citations omitted).

The Potter Appellants argue that *Tufco* clearly controls this case and its four independent holdings dictate that North Carolina law precludes application of the pollution exclusion provision in this instance. *See* Br. of Appellants at 18 ("Even if one assumes that the products/completed coverage is subject to the pollution exclusion clause, the District Court fails to address the other three independent reasons adopted *Tufco* [sic] for concluding that the pollution exclusion clause did not apply."). Auto-Owners contends that the district

court properly applied governing state law, and that *Tufco* is factually distinguishable. We briefly review *Tufco* before addressing the parties' contentions.

In *Tufco*, the North Carolina Court of Appeals considered whether a pollution exclusion clause, with wording substantially similar to that at issue here — although having a different scope of applicability — excluded property damage resulting from the use of a floor resurfacing product. *See* 409 S.E.2d at 695-700. The insured, a flooring company, resurfaced the floor of a Perdue chicken plant. During the resurfacing, some chicken, which had been stored in a cooler adjacent to one of the areas undergoing treatment, became spoiled. Apparently unaware of the adulteration, Perdue sent the chicken to its distributors, but upon receipt the customers notified Perdue that the chicken was unfit for consumption. After disposing of $500,000 in chicken, Perdue sued the insured for its loss, asserting that the chicken was damaged as a result of fumes released by the chemicals used in resurfacing. *Id.* at 693. The flooring company sought insurance coverage for Perdue's claims, but the insurer asserted that the CGL's pollution exclusion clause barred coverage for the loss.

The *Tufco* trial court rejected the insurer's contention, and the Court of Appeals affirmed, holding that the pollution exclusion clause was inapplicable on "four independent grounds." *Id.* at 695. First, the court held that the clause was "expressly inapplicable to and overridden by the 'completed operations' coverage in the policy." *Id.* Second, it held that the policy applied to the claim was ambiguous and had to be construed against the drafter/insurer. *Id.* Third, it held that the flooring material did not constitute a "pollutant" under the clause. *Id.* Finally, it held that the pollution exclusion clause "applies only to discharges into the environment, and none occurred here." *Id.*

Appellants maintain that all four grounds constitute controlling North Carolina law, and the district court erred by refusing to apply that precedent. We first note that although Appellants argue that "[t]he District Court failed to apply North Carolina law," Br. at 7 (emphasis removed), and that "the District Court refused to follow the controlling state precedent of *Tufco*," *id.* at 18 (emphasis removed), the district court devoted considerable attention to *Tufco* in its opinion. *See* Dist. Ct. slip op. at 12-20 (discussing *Tufco*) (J.A. 527-35).

Furthermore, we find that the district court's analysis of *Tufco*'s first three holdings was substantially correct. However, we conclude that the district court erred in failing to properly consider *Tufco*'s fourth independent ground, and for that reason we must vacate and remand. We discuss the district court's application of *Tufco*'s "four independent grounds" in turn.

1.

Based on *Tufco*'s first ground, Appellants argue that the products-completed operations coverage in the Auto-Owners policy overrides the pollution exclusion clause. We need not linger long on this argument, however, because the policy in the instant case is clearly distinguishable. *See Erie Ins. Exch. v. St. Stephen's Episcopal Church*, 570 S.E.2d 763, 766 (N.C. Ct. App. 2002) (noting that "[c]ase law interpreting and applying insurance coverage exclusions is varied and heavily dependent upon individual factual circumstances"). As the district court recognized, while products-completed operations coverage was triggered because Whitewood had started supplying water to the homes, the policy's plain terms demonstrate that the products-completed operations coverage does not trump the pollution exclusion clause.

The pollution exclusion clause in the *Tufco* policy applied only to work in progress. Here, the district court rightly held that the CGL was not so limited. The *Tufco* policy included a "Broadening of Coverage" flyer, wherein the insurer "expressed its intention not to subject the completed operations coverage to the pollution exclusion clause." *Tufco*, 409 S.E.2d at 697. Here, however, the policy had no such provision extending the completed operations coverage. By contrast, Appellee provides examples of other policies which do indeed contain such an exception to the pollution exclusion clause, though Auto-Owners never issued Whitewood such a policy. *See* Br. of Appellee at 36-37. Thus, we conclude that the district court correctly determined that *Tufco*'s first holding is inapplicable to the policy at issue in this case.[2]

---

[2]Furthermore, even if the Auto-Owners policy was more comparable to that at issue here, it is questionable whether *Tufco*'s first holding has

2.

Appellants argue that the application of the pollution exclusion clause would create an inherent ambiguity in the CGL policy, therefore the policy must be interpreted to provide coverage. In *Tufco*, the North Carolina Court of Appeals found that the "pollution exclusion" clause at issue did not exclude coverage because the CGL policy was inherently ambiguous. 409 S.E.2d at 697. It noted that when an insurance policy provides coverage for a particular activity, but that activity is later excluded, an improper ambiguity arises which must be construed against the insurer. *See id.* The court stated:

> Tufco is in the business of installing industrial flooring, and Tufco purchased a commercial liability policy to protect it from liabilities arising from the very type of activity at issue here. . . . West American was aware of the type of activity in which Tufco was engaged. . . . To allow West American to deny coverage for claims arising out of Tufco's central business activity would render the policy virtually useless to Tufco.

*Id.*

---

any continued viability. Initially, the North Carolina Supreme Court granted review of the Court of Appeals' decision, *see W. Am. Ins. Co. v. Tufco Flooring E., Inc.*, 415 S.E.2d 555 (N.C. 1992), but the court ultimately did not review the case, finding that its discretionary review had been improvidently granted. *See W. Am. Ins. Co. v. Tufco Flooring E.*, 420 S.E.2d 826 (N.C. 1992). However, in *Gaston County Dyeing*, the North Carolina Supreme Court overruled *Tufco*'s analysis of North Carolina law concerning the "date of discovery" rule, holding that the Court of Appeals incorrectly held that "'for insurance purposes property damage "occurs" when it is first discovered of manifested.'" 524 S.E.2d at 565 (quoting *Tufco*, 409 S.E.2d at 696). *Tufco*'s "date of discovery" holding had been essential to the Court of Appeals' determination that the completed operations coverage was triggered in the first instance. Indeed, the district court in the instant case recognized that had the North Carolina Court of Appeals applied the *Gaston* rule in *Tufco*, "it is unlikely that the court would have found the completed operations hazard applicable . . . ." Dist. Ct. slip op. at 12-13 n.6 (J.A. 527-28).

Here, the Potter Appellants argue that the Auto-Owners policy is equally ambiguous. They contend that Whitewood was in the business of providing water, and insurance coverage is provided for those operations, thus if the policy were read — on the basis of the pollution exclusion clause — to exclude coverage for claims arising from Whitewood's central business activity, the policy would be meaningless. Applying *Tufco*'s second independent holding in this instance, it is, of course, correct that when an ambiguity arises in an insurance policy, the policy must be given the interpretation most favorable to the insured. *Grant v. Emmco Ins. Co.*, 243 S.E.2d 894, 897 (N.C. 1978). However, "if the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written." *Gaston County Dyeing*, 524 S.E.2d at 563 (internal quotation marks and citations omitted). Here, we find that on the face of the policy, the pollution exclusion clause and its interplay with "completed-operations" coverage are not ambiguous. Indeed, the structure of the policy evidences no tension between the two provisions.

As noted above, the CGL coverage forms specify that they provide coverage for "bodily injury" and "property damage," J.A. 97, 164, 231, however, the coverage forms contain several explicit exclusions. Notably, the pollution exclusion clause excludes CGL coverage for injury or damage arising from "actual, alleged or threatened discharge dispersal, seepage, migration release or escape of pollutants . . . ." J.A. 98, 165, 232.[3] There is, however, no explicit or structural indication otherwise that the pollution exclusion does not apply to products-completed operations coverage. In fact, as the district court recognized, the policy contains other exclusions in which products-completed operations coverage is specifically mentioned. *See* Dist. Ct. slip op. at 20 (J.A. 535) (citing CGL Coverage A, ¶ j.). Paragraph j. excludes from coverage various types of property damage, however, it also details situations in which the exclusion does not apply, includ-

---

[3]Additionally, the policies contain a separate "Pollution Exclusion Endorsement," which specifies that under the CGL coverage pertaining to "Personal and Advertising Injury Liability," "personal injury" arising from "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants" is not covered under the policies. J.A. 107, 174, 241.

ing products-completed operations: "Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'" J.A. 99, 166, 233.

Furthermore, other policy exclusions apply *only* to products-completed operations coverage, demonstrating that such coverage is subject to *more*, not fewer exclusions than the general coverage, thus belying Appellants' arguments that products completed operations coverage is somehow broader than the CGL coverage overall. *See* J.A. 97-99, 164-66, 231-33 (Coverage A. Bodily Injury and Property Damage Liability, Exclusion ¶ l.) ("This insurance does not apply to: . . . 'Property damage' to 'your work' arising out of it or any part of it and including in the 'products-completed operations hazard'"); *id.* at 100, 167, 234 (Coverage C. Medical Payments, Exclusion ¶ f.) ("We will not pay expenses for 'bodily injury' . . . [i]ncluded within the 'products-completed operations hazard'.").

Accordingly, we conclude that the plain terms of the pollution exclusion clause as well as the structure of the CGL policy demonstrate that if the pollution exclusion was not intended to apply to the products-completed operation coverage, the policy would have so stated. Because we find that no ambiguity existed in the interplay between these contractual terms, *see Nationwide Mut. Ins. Co. v. Mabe*, 467 S.E.2d 34, 40 (N.C. 1996) (holding where policy is not ambiguous, the court must enforce the policy as written and may not remake the policy under the guise of interpreting an ambiguous provision), we need not further entertain Appellants' argument that the CGL is ambiguous because it purportedly does not provide coverage for claims arising out of Whitewood's central business activity. *See* Br. of Appellants at 30-33 (arguing that the policy must be interpreted in light of the "reasonable expectations" of the insured, and that "Whitewood reasonably expected coverage for claims arising out of its central business activity, the distribution of water to the residents of Neuse Crossing"); *Tufco*, 409 S.E.2d at 697 ("To allow [insurer] to deny coverage for claims arising out of Tufco's central business activity would render the policy virtually useless to Tufco."); *but see* Br. of Appellee at 36 (arguing that the policy does give effect to the coverage sought by the insured in that it protects against numerous types of risk that exist for Whitewood's central business activities, including "flooding, premises liability . . . ruptured water lines, dam-

ages from accidents during construction"); *id.* (noting that the bulk of the insurance premium paid by Whitewood was for commercial property coverage, not liability coverage).

3.

Appellants also assert that the district court failed to address *Tufco*'s third independent holding. Under *Tufco*'s third ground, the court held that the pollution exclusion clause was inapplicable because the flooring material's vapors were not a "pollutant" because when the raw material came onto the site, it was not an "irritant or contaminant." 409 S.E.2d at 609. The court concluded that when Tufco purchased its insurance, it understood "'pollutant' . . . as an unwanted impurity, not as the raw materials which Tufco purchased to do its job." *Id.*

In this vein, Appellants argue that Auto-Owners' denial of coverage for the "water operations and product on the incongruous basis that it constitutes a 'pollutant' (because it contained substances other than pure $H_2O$ molecules, which any drinking water does) flies in the face of logic and directly contradicts the terms of the policy and the parties' intent as manifested by those terms." Br. at 30; *see also id.* at 40 ("The policies' definitions of 'pollutants' [citations] is so overbroad . . . as to make the pollution exclusion clause ambiguous."); *id.* at 40-41 ("Water is a 'liquid' and would constitute an 'irritant' any time it was involved in an unwanted or undesired event or a 'contaminant' any time it contained anything other than pure $H_2O$ molecules."). We need not analyze whether under the policy, the definition of "pollutants" is overbroad, nor do we find *Tufco*'s third holding applicable, because the language of the Potter Appellants' state court complaint makes clear that the materials complained of were "pollutants." The pollution exclusion clause states: "Pollutants means any solid, liquid, gaseous or thermal irritant or *contaminant*, including smoke, vapor, soot, fumes, acids, alkalis, chemical and waste." J.A. 107 (emphasis added). Here, the Potter Appellants' complaint makes clear that, unlike the substances in *Tufco*, the manganese, iron, sediment, calcium, "'hard water' constituents" and other contaminants were never wanted in their homes or on their land. *See, e.g.*, Compl. ¶ 1 ("This is a lawsuit brought by residents . . . to recover for *contamination* of their homes and persons.") (emphasis added); *id.* ¶ 3 (referring to

"contamination"); *id.* ¶ 77 (alleging that defendants did not "correct the contamination, warn Plaintiffs of the contamination, remediate the contamination"); *id.* ¶ 113 (stating "high levels of other contaminants were found"); *id.* ¶¶ 136-37 (alleging "excessive levels of contaminants in the water" caused injury and property damage). Therefore, we reject Appellants' claims that *Tufco*'s third independent ground is inapplicable to this case, because the materials which the Potter Appellants repeatedly refer to as "contaminants" were "something creating impurity, something objectionable and unwanted," rather than "raw materials which [Whitewood] purchased to do its job." *Tufco*, 409 S.E.2d at 698.

4.

The pollution exclusion clause at issue excludes coverage for bodily injury or property damage "arising out of the actual, alleged or threatened *discharge, dispersal, seepage, migration, release or escape of pollutants.*" J.A. 98, 165, 232 (emphasis added). In interpreting this language, the district court explicitly "reject[ed] the argument that any discharge must have been into the environment to come within the meaning of the pollution exclusion clause. The language of the policy does not support such an interpretation." Dist. Ct. slip. op. at 13-14 n.8 (J.A. 528-29).

Appellants argue that such determination is flatly contrary to North Carolina law as expressed in *Tufco*'s fourth independent holding, "the pollution exclusion does not deny coverage to Tufco for Perdue's claims . . . because the pollution exclusion applies *only to discharges into the environment.*" *Tufco*, 409 S.E.2d at 699 (emphasis added). In *Tufco*, the North Carolina Court of Appeals considered the operative terms of the pollution exclusion clause — *e.g.*, "discharge," "dispersal," "release," and "escape" — and determined that they are "environmental terms of art," thus the pollution exclusion clause was inapplicable to the non-environmental damage at the Perdue plant. *Id.* at 699-700. Auto-Owners counters, arguing that Appellants' arguments as to the district court's erroneous application of *Tufco* are flawed in two main respects: (1) *Tufco* is an incorrect statement of North Carolina law, and the pollution exclusion clause should not be interpreted using technical terms; and (2) under either the plain or technical terms of the pollution exclusion clause, a "discharge, dis-

persal, seepage, migration, release or escape of pollutants" has, in fact, occurred.

a.

As a general rule in North Carolina, "the terms of an insurance contract must be given their plain ordinary, and accepted meanings unless they have acquired a technical meaning in the field of insurance or unless it is apparent that another meaning was intended." *Cherokee Ins. Co. v. Aetna Cas. & Sure. Co.*, 264 S.E.2d 913, 915 (N.C. Ct. App. 1980) (citing *Grant*, 243 S.E.2d 894); *accord N.C. Ins. Guar. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 446 S.E.2d 364, 367 (N.C. Ct. App. 1994). Auto-Owners argues that the *Tufco* court erroneously failed to give the terms of the pollution exclusion clause their ordinary meaning, and the district court in this case rightly "rejected the *Tufco* reasoning." Br. of Appellee at 18. Yet Appellants argue that *Tufco*'s use of the environmental terms of art in interpreting the pollution exclusion clause is a clear statement of North Carolina law which the district court was bound to follow.

In resolving this issue, we first recognize that courts nationwide are divided over whether the terms of pollution exclusion clauses apply only to traditional environmental damage, or whether they apply to non-environmental damage as well. *Compare Tufco*, 409 S.E.2d 699-700; *Belt Painting Corp. v. TIG Ins. Co.*, 763 N.Y.S.2d 790, 795-96 (N.Y. 2003) (applying *Tufco*'s limitations on scope of pollution exclusion clause); *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 81-82 (Ill. 1997) (holding that pollution exclusion clause did not extend beyond the traditional environmental arena), *and Atl. Mut. Ins. Co. v. McFadden*, 595 N.E.2d 762, 764 (Mass. 1992) (holding terms of the exclusion clause were environmental terms of art), *with Cincinnati Ins. Co. v. Becker Warehouse, Inc.*, 635 N.W.2d 112, 122 (Neb. 2001) (rejecting *Tufco*'s holding that discharge must be into the environment); *McKusick v. Travelers Indem. Co.*, 632 N.W.2d 525, 531-32 (Mich. Ct. App. 2001) (refusing to "engraft" environmental limitation onto the terms); *Peace ex rel. Lerner v. Northwestern Nat. Ins. Co.*, 596 N.W.2d 429, 444-46 (Wis. 1999) (rejecting view that terms like "discharge" are environmental terms of art); *Mid-Continent Cas. v. U.S. Fire Ins. Co.*, 1 S.W.3d 251, 253 (Tex. Ct. App. 1999) (holding polluted or contaminated drinking water fell within the pollution

exclusion clause), *and Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 522 & n.8 (Tex. Ct. App. 1995) (stating that most courts have found the pollution exclusion clause to be absolute).

To determine whether "discharge" and the other terms at issue are to be accorded their plain meaning, or treated as terms of art, our task is to apply the law as we believe the Supreme Court of North Carolina would. *Kinney*, *supra*. Having recognized that courts are divided concerning the construction of the pollution exclusion clause and the meanings of terms like "discharge," we note that "[u]nder North Carolina law, if an insurance contract term is capable of one or more interpretations, the one most favorable to the insured applies." *Haw River Land & Timber Co. v. Lawyers Title Ins. Co.*, 152 F.3d 275, 283 (4th Cir. 1998) (citing *Mills v. State Life & Health Ins. Co.*, 135 S.E.2d 586, 590 (N.C. 1964)); *see also Wachovia Bank & Trust Co.*, 172 S.E.2d at 522 ("If such a word has more than one meaning in its ordinary usage and if the context does not indicate clearly the one intended, it is to be given the meaning most favorable to the policy holder, or beneficiary, since the insurance company selected the word for use.") (internal citations omitted). Further, in conducting this analysis, we are to follow the precedent of the North Carolina intermediate appellate court unless it conflicts with North Carolina Supreme Court precedent or statute. *Neil*, *supra*.

In this instance, we conclude we are bound to follow *Tufco*'s determination that the clause at issue constitutes a series of terms of art. *See* 409 S.E.2d at 699-700 ("[T]he terms 'discharge' and 'release' are terms of art in environmental law . . . . Consequently, we find that any 'discharge, dispersal, release, or escape' of a pollutant must be into the environment in order to trigger the pollution exclusion clause and deny coverage to the insured."). First, we conclude as much because *Tufco*'s holding is not directly contradicted by North Carolina state law, and the other North Carolina state cases applying the pollution exclusion clause have done so within the context of traditional environmental pollution. *See Waste Management*, 340 S.E.2d at 380-81; *Home Indem. Co. v. Hoechst Celanese Corp.*, 494 S.E.2d 774 (N.C. Ct. App. 1998); *but see Whiteville Oil Co. v. Federated Mut. Ins. Co.*, 889 F. Supp. 241, 246 (E.D.N.C. 1995) (Britt, J.) (holding that pollution clause was unambiguous and barred coverage where gas station

fumes permeated a restaurant). Additionally, because the terms "discharge, dispersal," etc. are not defined in the policy, "[i]n the absence of such definition, nontechnical words are to be given a meaning consistent with the sense in which they are used in ordinary speech, *unless the context clearly requires otherwise*." *Wachovia Bank & Trust Co.*, 172 S.E.2d at 522 (emphasis added) (internal citations omitted). Here, the North Carolina Supreme Court's holding in *Waste Management* demonstrates that the context requires otherwise, and the North Carolina Supreme Court's language is in accord with the *Tufco* holding. In *Waste Management*, the court reasoned that the purpose of the pollution exclusion is to avoid "the yawning extent of potential liability arising from . . . discharge of hazardous substances *into the environment*," and provided no indication that the pollution exclusion clause has acquired a different purpose or meaning. 340 S.E.2d at 381 (emphasis added); *accord Tufco*, 409 S.E.2d at 699; *see also MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1216 (Cal. 2003) ("[T]hese terms [such as 'discharge,' 'dispersal,' etc.] used *in conjunction with* 'pollutant,' commonly refer to the sort [of] conventional environmental pollution at which the pollution exclusion was primarily targeted."); *id.* ("[T]here appears to be little dispute that the pollution exclusion was adopted to address the enormous potential liability resulting from anti-pollution laws enacted between 1966 and 1980."). Accordingly, we hold that the district court erred by failing to give "discharge, dispersal, seepage, migration, release or escape"[4] their technical meanings as environmental terms of art, and we must examine the materiality of such error.

---

[4]We reject Auto-Owners' factual argument that because the pollution exclusion clause here at issue contained the additional terms "seepage" and "migration" it is distinguishable from that in *Tufco*. Other courts which have joined *Tufco* in holding the pollution exclusion clause is comprised of terms of art have done so even where the clause contains the additional terms. *See, e.g.*, *Belt Painting Corp.*, 763 N.Y.S.2d at 795-96; *Gainsco Ins. Co. v. Amoco Prod. Co.*, 53 P.3d 1051, 1065 (Wyo. 2002); *see also United States v. Shell Oil Co.*, 841 F. Supp. 962, 969 (C.D. Cal. 1993) (discussing use of terms "seepage" and "migration" within the CERCLA context); *Vermont v. Staco, Inc.*, 684 F. Supp. 822, 832-33 (D. Vt. 1988) (same).

b.

Auto-Owners argues that even if the pollution exclusion clause is interpreted as a set of environmental terms of art, there has nonetheless been a "discharge, dispersal, seepage, migration, release or escape of pollutants" which bars coverage in this case. We find that the occurrence and the resulting personal injury and property damage allegedly suffered by the Potter Appellants are certainly not the prototypical environmental harms that a pollution exclusion clause is generally intended to protect against — *e.g.*, a traditional response scenario where the insured is remediating a spill or toxic release, or monitoring such work — but seem more akin to an instance in which an adulterated product has been supplied to consumers. However, the Potter Appellants' inartful pleading lends Auto-Owners' position some viability, because some — but not all — portions of the complaint appear to fall within the ambit of the pollution exclusion clause. *See Waste Management*, 340 S.E.2d at 377 (stating that to determine whether insurance coverage is available, court must construe policy, its exclusions and exceptions, and determine "whether events as alleged in the pleadings and papers before the court are covered by the policies"); *Doe v. Jenkins*, 547 S.E.2d 124, 127 (N.C. Ct. App. 2001) (comparing allegations of plaintiff's complaint to language of insurance policy exclusions to determine that insured was not indemnified).

For example, *Tufco*'s holding that traditional environmental damage was not at issue rested on the fact that the discharges were not "into or upon land, the atmosphere or any water course or body of water," 409 S.E.2d at 699 (internal quotation marks and citations omitted), but were "confined to a cooler within a chicken processing plant." *Id.* at 700. Here, however, the Potter Appellants' complaint contains allegations which expressly sound as claims of traditional environmental discharge. *See, e.g.*, Am. Compl. ¶ 199 (alleging the insured caused "physical invasion and trespass onto Plaintiffs' property of substances including sediments and contaminants in Plaintiffs' domestic water supply"); *id.* ¶ 202 (alleging "entry of mineral contaminants onto the surface of their property"); *id.* ¶ 225(d) ("[c]ausing or allowing to be caused the *discharge* of iron, manganese, calcium and other contaminants from the water supply into the homes and *onto the property* of Plaintiffs") (emphasis added). Furthermore, the

Potter Appellants' negligence per se count alleges violations of state and federal *environmental* law. *Id.* ¶ 221(a)-(b) (alleging violations of the North Carolina Department of Environment and Natural Resources, Environmental Health section of the code pertaining to water quality standards for concentrations of iron and manganese); *id.* ¶ 221(c)-(e) (alleging violations of the state environmental code's *groundwater quality standards*); *id.* ¶ 221(f)-(g) (alleging levels of contaminants in public water systems violative of EPA's regulations on drinking water). Thus, insofar as the Potter Appellants pled claims of traditional environmental discharge, the pollution exclusion clause bars insurance coverage.

By contrast, where the Potter Appellants allege that they suffered property damage and personal injury as a result of Whitewood's distribution of an adulterated product and the insured's attendant negligence and breach of warranties, the pollution exclusion clause is not likely to serve as a bar. *See, e.g.*, Am. Compl. ¶ 215(a) (asserting Whitewood operated a defective water supply system); *id.* ¶ 215(b) (alleging Whitewood allowed the water supply system to become overloaded); *id.* ¶ 215(c) (alleging a failure to repair defects in the water supply system); *id.* ¶ 216 ("Defendants' negligence was the proximate cause of damages"); *see also id.* ¶ 236(b)-(e) (alleging failures to disclose); *compare* J.A. 240 (insurance contract provides that for the purposes of the "products-completed operations hazard," "your product" includes "[w]arranties or representations made . . . with respect to the fitness, quality, durability, performance or use of 'your product'"). Considering these claims within the amended complaint under North Carolina's "comparison" test, *see Waste Management*, 340 S.E.2d at 377, whereby we take the contents and allegations of the controlling pleading as true and compare them to the insurance policy provisions to establish whether any of the allegations would give rise to coverage, we conclude that such claims — if not otherwise barred by separate exclusions, *infra* — provide a sufficient basis upon which Whitewood can invoke Auto-Owners' duty to defend. Under North Carolina law, the duty to defend is broader than the duty to indemnify. *Pa. Nat'l Mut. Cas. Ins. Co.*, 579 S.E.2d at 406 (citations omitted). An insurer has a duty to defend when the pleadings state facts demonstrating that the alleged injury is covered by the policy. *Id.* at 407. As here, the mere possibility that the insured is liable

and that the potential liability is covered may suffice to impose the duty to defend. *Waste Management*, 340 S.E.2d at 377.

While Whitewood's duty to defend is implicated by such allegations, the record on appeal does not allow us to conclusively determine precisely which of the Potter Appellants' claims against Whitewood Auto-Owners would be required to indemnify, and those to which the pollution exclusion clause and other exclusions would serve as a bar. Accordingly, in vacating the district court's entry of summary judgment, we remand to the district court for further consideration of these issues and determination of the applicability of the CGL exclusions. Specifically, the district court must determine: (1) whether other exclusions upon which the district court has never ruled might bar coverage and foreclose the duty to defend, notwithstanding this court's decision regarding the pollution exclusion clause issue, and (2) assuming the duty to defend attaches, which of the Potter Appellants' claims Auto-Owners would ultimately be required to indemnify.

## IV.

For the reasons stated above, we vacate the district court's grant of summary judgment and remand for further proceedings not inconsistent with this opinion.

*VACATED AND REMANDED*