**GASTON COUNTY DYEING MACHINE CO. v. NORTHFIELD INS. CO.**

[351 N.C. 293 (2000)]

GASTON COUNTY DYEING MACHINE COMPANY, TAX I.D. NO. 56-02-32800, PLAINTIFF v. NORTHFIELD INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, ROSENMUND, INC., ALLENDALE MUTUAL INSURANCE COMPANY, STERLING WINTHROP, INC., AND STERLING PHARMACEUTICALS, INC., AND INTERNATIONAL INSURANCE COMPANY, DEFENDANTS, AND UNITED CAPITOL INSURANCE COMPANY, INTERVENOR

No. 10PA99

(Filed 4 February 2000)

### 1. Insurance— comprehensive general liability—occurrence— coverage triggered

Where there was no dispute that contamination of a medical diagnostic dye commenced on 21 June 1992 when a pressure vessel ruptured and a chemical used in the production process leaked into the dye and that the leakage continued until discovery on 31 August 1992, the rupture of the pressure vessel caused all of the ensuing property damage and there was but one "occurrence" that took place when the leak commenced on 21 June for purposes of comprehensive general liability policies insuring the designer-seller and the fabricator of the pressure vessel. Therefore, only the 1 July 1991 to 1 July 1992 policy period was triggered even though the leakage contaminated multiple dye lots extending into the next policy period.

### 2. Insurance— comprehensive general liability—knowledge of injury-in-fact—coverage triggered

Where the date of the injury-in-fact is known with certainty, comprehensive general liability policies on the risk on that date are triggered. To the extent that *West Am. Ins. Co. v. Tufco Flooring East*, 104 N.C. App. 312, 409 S.E.2d 692 (1991), purports to establish a bright-line rule that property damage occurs "for insurance purposes" at the time of manifestation or on the date of discovery, that decision is overruled.

### 3. Insurance— comprehensive general liability—damages from single event—single occurrence—coverage triggered

When an accident that causes an injury-in-fact occurs on a date certain and all subsequent damages flow from the single event, there is but a single occurrence, and only liability policies on the risk on the date of the injury-causing event are triggered.

### 4. Insurance— comprehensive general liability—claims-made policies—occurrence-based policies—excess coverage

A pressure vessel designer-seller's claims-made comprehensive general liability policy was excess over other insurance available to the designer-seller as an additional insured in occurrence-based comprehensive general liability policies issued to the pressure vessel fabricator that provided primary and umbrella excess coverage where coverage under the occurrence-based policies was triggered by damage resulting from a 21 June 1992 pressure vessel leak; the policy year for the occurrence-based policies was 1 July 1991 to 1 July 1992 and for the claims-made policies was 4 October 1991 to 4 October 1992; the "other insurance" clause of the claims-made policy provided that the coverage was excess to other insurance which was effective prior to the beginning of the policy period and which "continued after" the retroactive policy date of 4 December 1986; and the occurrence-based policies were maintained without interruption after 4 December 1986 even though they did not begin before that date.

Justice MARTIN did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 131 N.C. App. 438, 509 S.E.2d 778 (1998), affirming in part, reversing in part, and remanding an order signed 3 February 1997 by Jones (Julia V.), J., in Superior Court, Mecklenburg County. Heard in the Supreme Court 17 September 1999.

*Yates, McLamb & Weyher, L.L.P., by Barbara B. Weyher; and Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., by Tracy R. Gunn, pro hac vice, for defendant-appellant Northfield Insurance Company.*

*Dean & Gibson, L.L.P., by Rodney Dean and Barbara J. Dean, for defendant-appellee Liberty Mutual Insurance Company.*

*Lustig & Brown, L.L.P., by James J. Duggan, pro hac vice; and Henson & Henson, L.L.P., by Perry Henson, Jr., for defendant-appellee International Insurance Company.*

*Golding, Meekins, Holden, Cosper & Stiles, L.L.P., by Harvey L. Cosper, Jr.; and Sedgwick, Detert, Moran, & Arnold, by Sidney Rosen, pro hac vice, for intervenor-appellant United Capital Insurance Company.*

GASTON COUNTY DYEING MACHINE CO. v. NORTHFIELD INS. CO.

[351 N.C. 293 (2000)]

*Parker, Poe, Adams & Bernstein L.L.P., by Josephine H. Hicks, on behalf of Hoechst Celanese Corporation, amicus curiae.*

*Rivkin, Radler & Kremer, by Richard S. Feldman, pro hac vice; and Bennett & Guthrie, L.L.P., by Richard Bennett, on behalf of Commercial Union Insurance Company and Fireman's Fund Insurance Company, amici curiae.*

FRYE, Chief Justice.

In this case, the trial court reformed primary and excess policies covering plaintiff so as to afford full coverage to defendant Rosenmund, Inc. (Rosenmund); applied the "injury-in-fact" date in determining when damage to property occurred; concluded that the applicable policy period was a one year period beginning 1 July 1991; and ruled that the policy issued by intervenor was excess to all other coverage available to Rosenmund. The Court of Appeals affirmed in part and reversed in part the trial court's order. We allowed discretionary review to determine the correctness of the Court of Appeals' decision.

This case arises out of a products liability action that was originally filed in the United States District Court for the District of Puerto Rico on 17 December 1992. Sterling Pharmaceuticals, Inc. (Sterling); Sterling Winthrop, Inc.; and Allendale Mutual Insurance Company filed the underlying action to recover damages in excess of $20 million from Gaston County Dyeing Machine Company (Gaston), Rosenmund, and their insurers. The original complaint alleged defects in the design and manufacture of pressure vessels fabricated by Gaston for Rosenmund and sold by Rosenmund to Sterling for use in production of contrast media dyes for diagnostic medical imaging. On 21 June 1992, Sterling modified the production process, increasing the operating pressure in one of the pressure vessels. On 31 August 1992, Sterling discovered that ethylene glycol, a chemical used in connection with the heating process, had leaked into the vessel and contaminated over sixty tons of the contrast media dye.

Liberty Mutual Insurance Company (Liberty Mutual), Northfield Insurance Company (Northfield), and International Insurance Company (International) had issued policies insuring Gaston effective for the policy periods 1 July 1991 to 1 July 1992 and 1 July 1992 to 1 July 1993. For each policy period, Liberty Mutual issued to Gaston a comprehensive general liability (CGL) policy providing $1 million in primary coverage per occurrence and a commercial

umbrella excess liability policy providing $1 million coverage per occurrence. Rosenmund purported to be an additional named insured on the Liberty Mutual policies. Northfield issued to Gaston commercial excess liability policies providing $5 million coverage for the 1991-92 policy period and $9 million for the 1992-93 policy period. International issued to Gaston commercial excess liability policies providing $9 million coverage for the 1991-92 policy period and $5 million for the 1992-93 policy period. The Liberty Mutual, Northfield, and International policies are all "occurrence-based" policies, and the Northfield and International excess policies "follow the form" of the Liberty Mutual umbrella policies. United Capital Insurance Company (United) issued to Rosenmund a separate CGL policy providing $2 million coverage on a "claims-made" basis for claims reported during the 4 October 1991 to 4 October 1992 policy period.

In February 1994, Gaston brought this action for declaratory judgment against all its insurers, the plaintiffs from the underlying action, and Rosenmund. As an additional insurer for Rosenmund, United was allowed to intervene. Northfield filed a parallel declaratory judgment action in Puerto Rico.

Liberty Mutual provided defense to Rosenmund in the underlying action from 8 July 1993 until 23 August 1993, when Liberty Mutual withdrew after determining that the "additional insured" endorsements of the Gaston policies did not cover Rosenmund for products liability. United assumed Rosenmund's defense in the underlying action under its 4 October 1991 to 4 October 1992 CGL policy until 26 January 1996, when Liberty Mutual resumed Rosenmund's defense pursuant to a partial settlement agreement between the two parties.

Later in 1995, the underlying action was resolved by settlement agreement, and Gaston and Rosenmund dismissed their claims against the insurers. The four insurance carriers contributed to a settlement fund of $11 million as follows: Liberty Mutual, $2 million; United, $2 million; Northfield, $5 million; and International, $2 million. Pursuant to a stipulation of the insurers, the following issues were reserved for judicial determination: choice of law and forum; trigger of coverage; priority of coverage; allocation of payments among insurers; and whether Rosenmund was afforded the same coverage as Gaston under the Liberty Mutual, International, and Northfield policies.

In 1996, following settlement of the underlying action, Liberty Mutual, International, and United filed motions for summary judg-

GASTON COUNTY DYEING MACHINE CO. v. NORTHFIELD INS. CO.

[351 N.C. 293 (2000)]

ment in the North Carolina declaratory judgment action. The summary judgment motions were heard at the 5 December 1996 Civil Session of Superior Court, Mecklenburg County, and an additional hearing was held on 17 January 1997.

After determining that there were no issues of material fact and that North Carolina law was applicable to all issues, the trial court found as follows:

4. . . . [O]n June 21, 1992 damage occurred to products being manufactured by Sterling Pharmaceuticals as the result of pressure vessel leakage, and that damage continued to result from the same or substantially the same leaking condition from June 21, 1992 until discovery of the damage on August 31, 1992.

5. . . . [T]here was one "occurrence" as that term is used in all applicable insurance policies.

6. . . . [T]he "occurrence" of damages in this case took place on June 21, 1992 when the leak damage commenced.

7. . . . [T]he damages in this case resulted from continuous or repeated exposure to substantially the same general harmful conditions, i[.]e., pressure vessel leakage resulting in the contamination of pharmaceutical dye with ethylene glycol during the manufacturing process at Sterling Pharmaceuticals.

8. . . . [T]he date upon which damage occurred can be established without question or uncertainty even though the existence of the damage was not immediately discovered. Under these circumstances, the Court finds that applicable North Carolina law is that the "injury-in-fact" that took place on June 21, 1992 triggers the coverages applicable on that date and that the liability of the respective insurance carriers is for the coverages applicable on June 21, 1992 . . . .

9. . . . [T]he Liberty Mutual policies, the Northfield policy, and the International policy for the period July 1, 1992 to July 1, 1993 are not applicable to the loss in question.

. . . .

12. . . . Rosenmund is entitled to coverage for the claims of Sterling Pharmaceuticals as an additional insured under the Liberty Mutual primary and excess policies; as such, Rosenmund is also entitled to full coverage for the claims of Sterling

Pharmaceutical[s] under the Northfield and International . . . policies which the Court finds follow form to the Liberty Mutual excess policies.

13. . . . [T]he policies of insurance issued by Liberty Mutual, Northfield, and International are "occurrence" policies, while the policy of insurance issued by United Capitol is a "claims made" policy. The facts are undisputed that the claim made in this case was during the pendency of the United Capitol policy that provided coverage from a period of October 4, 1991 to October 4, 1992. It is undisputed that not only did all damages take place during that period of time, but claims were also duly made to United Capitol during that same policy period. However, the Court finds that the United Capitol policy is excess above the other coverage available to Rosenmund, therefore its coverage is not reached.

. . . .

15. . . . [T]he coverage obligations of the carriers for funding the $11 million settlement on behalf of Gaston and Rosenmund are as follows:

 a.  Liberty Mutual—primary coverage—$1 million

 b.  Liberty Mutual—excess coverage—$1 million

 c.  Northfield—$5 million

 d.  International n/k/a Westchester—$4 million

16. . . . United Capitol is entitled to reformation of the Liberty Mutual policies to provide Rosenmund with product liability coverage and to a declaration of coverage for Rosenmund for the claims of Sterling Pharmaceuticals as an additional insured under the Liberty Mutual primary and excess policies and under the Northfield and International n/k/a Westchester policies, which follow form to the Liberty Mutual excess policies; and that United Capitol's policy is excess over all other coverages available to Rosenmund. Accordingly, Liberty Mutual must pay all costs of defense for Rosenmund, United Capitol is entitled to reimbursement from Liberty Mutual for its costs of defending Rosenmund, and United Capitol is entitled to reimbursement from International n/k/a Westchester for its contribution toward the settlement of Sterling Pharmaceuticals' claims.

Based on its findings and conclusions, the trial court ordered that United recover $453,443 from Liberty Mutual in defense costs for Rosenmund and $2 million from International, plus interest on both amounts. From this order, International and Liberty Mutual appealed.

The Court of Appeals affirmed that part of the trial court's order reforming the primary and excess policies covering Gaston so as to afford Rosenmund full coverage. However, the Court of Appeals reversed those portions of the trial court's order (1) applying the "injury-in-fact" date in determining when the damage to Sterling's property occurred, (2) concluding that the applicable policy period was 1 July 1991 to 1 July 1992 rather than 1 July 1992 to 1 July 1993, and (3) ruling that the United policy was excess to all other coverage available to Rosenmund. This Court allowed petitions for discretionary review by Northfield and United on 8 April 1999.

We must decide the following issues raised by the two petitions for discretionary review: whether application of an "injury-in-fact" or a "date-of-discovery" trigger of coverage is appropriate where the date of property damage is known and undisputed; whether there was a single occurrence or multiple occurrences triggering the first policy year, the second policy year, or both; and whether Rosenmund's own policy issued by United should be considered excess to or contributing with the Liberty Mutual and International policies issued to Gaston and under which Rosenmund was an additional insured. For the reasons stated below, we reverse the Court of Appeals as to these issues.

We begin by noting the well-established principle that "an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986). The rules of construction for insurance policies are likewise familiar:

> As with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued. Where a policy defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the

insurance company and in favor of the policyholder. Whereas, if the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.

*Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505-06, 246 S.E.2d 773, 777 (1978); *see also C.D. Spangler Constr. Co. v. Industrial Crankshaft & Eng'g Co.*, 326 N.C. 133, 142, 388 S.E.2d 557, 563 (1990). We apply these principles to the insurance policies in this case.

The Liberty Mutual CGL policies issued to Gaston contain the following coverage provisions:

SECTION I—COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        (2) The "bodily injury" or "property damage" occurs during the policy period.

The Liberty Mutual CGL policies also contain the following definitions in Section V:

9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    . . . .

12. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be

GASTON COUNTY DYEING MACHINE CO. v. NORTHFIELD INS. CO.

[351 N.C. 293 (2000)]

deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

The Liberty Mutual umbrella excess liability policies contain the following provisions:

SECTION I—COVERAGE—EXCESS LIABILITY

1. Insuring Agreement.

    a. We will pay those sums in excess of the retained limit that the insured becomes legally obligated to pay as damages because of:

    (1) bodily injury;

    (2) property damage;

. . . .

to which this policy applies and caused by an occurrence.

. . . .

SECTION IV—DEFINITIONS

. . . .

5. Occurrence means:

    a. With respect to bodily injury or property damage[]: an accident, including continuous or repeated exposure to substantially the same harmful conditions . . . .

. . . .

9. Property damage means:

    a. Physical injury to tangible property, including all resulting loss of use of that property . . . .

The International and Northfield excess liability policies provided coverage for amounts in excess of coverage in the underlying Liberty Mutual policies and "follow the form" of the Liberty Mutual umbrella excess liability policy.

GASTON COUNTY DYEING MACHINE CO. v. NORTHFIELD INS. CO.

[351 N.C. 293 (2000)]

[1] We begin by examining the two related issues regarding trigger of coverage. There is no dispute[1] that the contamination of Sterling's contrast media dye commenced on 21 June 1992, as a result of the rupture of the pressure vessel and subsequent leakage, and continued until discovery on 31 August 1992. Applying the principles of insurance contract interpretation set forth above, we conclude that the trial court correctly determined that there was one "occurrence" that took place on 21 June 1992 when the leak commenced.

Under the insurance policies at issue in this case, coverage is triggered by "property damage" when the property damage is caused by an "occurrence" and when the property damage occurs during the policy period. The property damage alleged in this case was the contamination of sixty tons of Iohexol, a contrast media dye used for diagnostic medical imaging, valued in excess of $20 million. The applicable Liberty Mutual primary policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Because the term "occurrence" is defined in the policy, we use the specific definition.

However, nontechnical words are to be given their ordinary meaning. An accident is generally considered to be an unplanned and unforeseen happening or event, usually with unfortunate consequences. See, e.g., Merriam-Webster's Collegiate Dictionary 7 (10th ed. 1993); Black's Law Dictionary 15 (7th ed. 1999). The sudden, unexpected leakage from the pressure vessel, causing release of a contaminant into Sterling's dye product, certainly comes within the ordinary meaning of the term "accident." Further, there is no dispute that all the damage occurred as a result of exposure to the same harmful condition—continued leakage of the contaminant into the dye product. Thus, under the plain language of the insurance policies, the property damage was caused by an occurrence, and property damage occurred on 21 June 1992 when the pressure vessel ruptured. Stated differently, the "injury-in-fact" in this case can be determined with certainty because the cause of the property damage occurred and property damage resulted on 21 June 1992. Therefore, the 1 July 1991 to 1 July 1992 policy period is triggered, even though the contamination continued until discovery of the leak on 31 August 1992.

---

1. Although there was some suggestion by one party that the date of the rupture could not be determined, the complaint alleges and the trial court found the date to be 21 June 1992, and no exception was taken to this finding of fact.

**[2]** Although our Court of Appeals has addressed the trigger of coverage issue, it is an issue of first impression for this Court. We conclude that where the date of the injury-in-fact can be known with certainty, the insurance policy or policies on the risk on that date are triggered. This interpretation is logical and true to the policy language. Further, although other jurisdictions have adopted varied approaches in determining the appropriate trigger of coverage, the injury-in-fact approach is widely accepted. *See, e.g., Dow Chem. Co. v. Associated Indem. Corp.*, 724 F. Supp. 474, *op. supplemented*, 727 F. Supp. 1524 (E.D. Mich. 1989).

We find unconvincing the approach adopted in *West Am. Ins. Co. v. Tufco Flooring East*, 104 N.C. App. 312, 409 S.E.2d 692 (1991), *disc. rev. improvidently allowed*, 332 N.C. 479, 420 S.E.2d 826 (1992), and relied upon by the Court of Appeals in the instant case. In *Tufco*, the Court of Appeals analyzed a CGL policy containing a pollution-exclusion clause to determine whether coverage was available for damage to chicken stored in a cooler and contaminated with styrene released during floor resurfacing work. The Court of Appeals stated four different bases upon which to affirm the trial court's ruling that the pollution-exclusion clause did not exclude coverage. One of the reasons given by the Court of Appeals was its conclusion that "for insurance purposes property damage 'occurs' when it is first discovered or manifested." *Id.* at 318, 409 S.E.2d at 696. As discussed above, it is well-established North Carolina law that the language of the insurance policy controls, and in the instant case, we determine that property damage occurred for purposes of the applicable policies at the time of the injury-in-fact. To the extent that *Tufco* purports to establish a bright-line rule that property damage occurs "for insurance purposes" at the time of manifestation or on the date of discovery, that decision is overruled.

**[3]** International asserts that if the manifestation or date-of-discovery approach is not accepted, this Court should find that both policy periods are triggered under a "continuous" or "multiple trigger" theory. We decline to do so. In determining whether there was a single occurrence or multiple occurrences, we look to the cause of the property damage rather than to the effect. As noted previously, an "occurrence" is an accident, "including continuous or repeated exposure to substantially the same general harmful conditions." In this case, the rupture of the pressure vessel caused all of the ensuing property damage, even though the damage continued over time, contaminating multiple dye lots and extending over two policy periods. Therefore,

when, as in this case, the accident that causes an injury-in-fact occurs on a date certain and all subsequent damages flow from the single event, there is but a single occurrence; and only policies on the risk on the date of the injury-causing event are triggered. We believe this interpretation is the most faithful to the language and terms of the insurance policy.

For the foregoing reasons, we therefore reverse the Court of Appeals and affirm the decision of the trial court "that the 'injury-in-fact' that took place on June 21, 1992 triggers the coverages applicable on that date and that the liability of the respective insurance carriers is for the coverages applicable on June 21, 1992."

Next, we note again the trial court's ruling that Rosenmund was entitled to reformation of the Liberty Mutual primary and excess policies to provide it with products liability coverage and that Rosenmund was also an additional insured under the International and Northfield excess policies, which follow the form of the Liberty Mutual policies. In its new brief to this Court, Northfield asserts that this issue was decided in error. However, Northfield did not present this issue in its petition for discretionary review, nor has the issue been raised for review by any other party. Further, Northfield simply announces that it "reaffirms that it joins the positions of Liberty Mutual and International regarding this issue, as stated in the Court of Appeals briefs," and does not make an argument or cite authority in support of its position. As this issue is not properly before this Court for review, the decision of the Court of Appeals on the issue of reformation remains undisturbed.

[4] Finally, the trial court ruled that United's policy is excess over all other coverages available to Rosenmund and, therefore, ordered Liberty Mutual to reimburse United for the costs of defending Rosenmund and ordered International to reimburse United for its contribution to the settlement of the Sterling claims. Because the Court of Appeals concluded that the 1992-93 policy year was triggered, it held that the trial court erred in ruling that United's policy was excess. We now must interpret the applicable policies in view of our decision that coverage was triggered in the 1991-92 policy period by a single occurrence. For the reasons that follow, we reverse the Court of Appeals as to this final issue.

As discussed above, Liberty Mutual issued to Gaston "occurrence-based" policies for the policy year 1 July 1991 to 1 July 1992 that provided primary and umbrella excess insurance coverage to

Rosenmund as an additional insured. International also issued an occurrence-based policy for the 1 July 1991 to 1 July 1992 policy year that provided excess insurance to Rosenmund as an additional insured. These policies were triggered by the property damage that occurred as a result of the 21 June 1992 pressure vessel leak. Additionally, United issued to Rosenmund a "claims-made" policy, that provided coverage for certain claims made during its 4 October 1991 to 4 October 1992 policy year. The claim in this case, based on the pressure vessel leak, was made during this policy period.

United contends that its claims-made policy is excess to all occurrence-based policies providing coverage for the 1991-92 policy year, while Liberty Mutual and International argue that United's policy provides primary coverage and that United is therefore not entitled to reimbursement. Again, we look to the language of the applicable insurance policies to decide the issue.

Where multiple policies appear to provide coverage to a common insured for the same risk, the insurers' respective obligations to pay are determined by examining each policy on its own terms. This Court stated the general principle in *Allstate Ins. Co. v. Shelby Mut. Ins. Co.*, 269 N.C. 341, 152 S.E.2d 436 (1967).

> The terms of another contract between different parties cannot affect the proper construction of the provisions of an insurance policy. The existence of the second contract, whether an insurance policy or otherwise, may or may not be an event which sets in operation or shuts off the liability of the insurance company under its own policy. Whether it does or does not have such effect, first[,] requires the construction of the policy to determine what event will set in operation or shut off the company's liability and, second, requires a construction of the other contract, or policy, to determine whether it constitutes such an event.

*Id.* at 346, 152 S.E.2d at 440; *see also Reliance Ins. Co. v. Lexington Ins. Co.*, 87 N.C. App. 428, 436, 361 S.E.2d 403, 408 (1987) (noting North Carolina rule of construing insurance policies independent of one another).

We begin with the Liberty Mutual CGL policy, which provides, in part, as follows:

SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS

. . . .

GASTON COUNTY DYEING MACHINE CO. v. NORTHFIELD INS. CO.

[351 N.C. 293 (2000)]

4. Other Insurance.

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. . . .

b. Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire insurance for premises rented to you; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

By its express terms, the Liberty Mutual CGL policy is primary unless there exists other insurance as identified in subsection (1) or (2), set out above, or if the loss is of a specific type identified in subsection (3). The United CGL policy issued to Rosenmund is not "other insurance" of the type specified in the Liberty Mutual policy, nor is the loss of a type that would cause the Liberty Mutual policy to be considered excess. Therefore, the Liberty Mutual CGL policy provides primary insurance for the covered property damage in this case.

Nonetheless, Liberty Mutual contends that United is a co-primary insurer because United issued a CGL policy to Rosenmund intended to provide primary liability coverage, including products liability coverage, and charged Rosenmund a premium consistent with that coverage. Therefore, contends Liberty Mutual, United must share the cost of defending Rosenmund. However, United's policy also contains an "other insurance" clause, which is identical to the one in the Liberty Mutual policy except for the following additional provisions under section 4.b.:

**GASTON COUNTY DYEING MACHINE CO. v. NORTHFIELD INS. CO.**

[351 N.C. 293 (2000)]

b. Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

*(1) That is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to "bodily injury" or "property damage" on other than a claims-made basis, if:*

*(a) No Retroactive Date is shown in the Declarations of this insurance; or*

*(b) The other insurance has a policy period which continues after the Retroactive Date shown in the Declarations of this insurance[.]*

(Emphasis added.) Therefore, we examine United's "other insurance" clause to determine what event(s) bring it into operation. *See Allstate Ins. Co.*, 269 N.C. at 346-47, 152 S.E.2d at 440-41.

There is no dispute that the 1 July 1991 to 1 July 1992 policy issued by Liberty Mutual was "effective prior to" United's 4 October 1991 to 4 October 1992 policy. Likewise, it is clear that the occurrence-based policy issued by Liberty Mutual applies to property damage "on other than a claims-made basis." However, the parties contest the meaning of section 4.b.(1)(b) in United's policy. Liberty Mutual asserts that its policy does not have a policy period that "continues after" 4 December 1986, the retroactive date in the United policy, because the Liberty Mutual policy did not exist before that date. United, on the other hand, asserts that the Liberty Mutual policy does continue after 4 December 1986, because the words "continues after" do not necessarily imply "begins before."

Following the usual rules of construction, we use a term's ordinary meaning if no specific definition is contained within the policy. *See Woods*, 295 N.C. at 505-06, 246 S.E.2d at 777. The word "continue" is not defined in the policy, but continue is generally understood to mean to maintain without interruption. *See, e.g., Merriam-Webster's Collegiate Dictionary* 251. The Liberty Mutual policy was in effect from 1 July 1991 to 1 July 1992 and, therefore, was maintained without interruption *after* 4 December 1986, the retroactive date of United's policy. It is unnecessary to imply a requirement that the other insurance begin before the retroactive date in order to effec-

tively determine that other insurance "continues after" the retroactive date.

Further, we consider a policy provision in context so that various terms of a policy are harmoniously construed. *See Woods*, 295 N.C. at 506, 246 S.E.2d at 777. In section 4.b.(1), the United policy contains a requirement that the other insurance "is effective prior to the beginning of the policy period shown in the Declarations of this insurance," which is 4 October 1991. Thus, the United policy defines the time frame within which the existence of "other insurance" causes United's coverage to be excess. The other insurance must be effective prior to 4 October 1991, and it must continue after 4 December 1986. Therefore, the Liberty Mutual CGL policy effective 1 July 1991 to 1 July 1992 is "other insurance" under the United policy.

Because the existence of the Liberty Mutual primary policy causes United's "other insurance" clause to be effective, the United policy is not co-primary as contended by Liberty Mutual. The United policy, by operation of its other insurance provision, is excess to the Liberty Mutual policy. Therefore, even though the United policy contains a standard insuring agreement found in most primary CGL policies, which would require it to defend Rosenmund against any suit for damages, in this case the following provision in the United policy takes precedence:

b.  Excess Insurance

. . . .

When this insurance is excess, we will have no duty under Coverages A or B to defend any "claim" or "suit" that any other insurer has a duty to defend.

International also contends that United provided primary coverage to Rosenmund and asserts that because its policy is a "pure" excess policy, it can never be made primary to United's "primary" policy. International is correct that its 1 July 1991 to 1 July 1992 occurrence policy is an "excess" insurance policy. Its insuring agreement provides that International will "indemnify the insured for that amount of loss which exceeds the amount of loss payable by underlying policies described in the Declarations." Clearly, the International policy was intended to cover losses only in excess of those covered by underlying insurance. However, the United policy is not listed in the International policy's declarations as an "underlying policy," and therefore, International did not issue its excess policy

contingent upon the existence of the United policy. We disagree with International's assertion that its policy is in some way inherently excess to the United policy.

Further, for the same reasons articulated earlier, the International 1991-92 policy is "other insurance" by the terms of the United policy. The International policy is an occurrence-based policy, effective before 4 October 1991, and it continues after 4 December 1986. The United policy specifically provides that it is excess over any other insurance "whether primary, *excess*, contingent or on any other basis." (Emphasis added.)

The International policy also contains an "other insurance" clause, which provides as follows:

K. Other Insurance. If other valid and collectible insurance is available to the insured which covers a loss also covered by this policy, other than insurance that is specifically purchased as being in excess of this policy, this policy shall operate in excess of, and not contribute with, such other insurance.

However, in this case, because the United policy is excess, it is not "available" within the meaning of the International policy's "other insurance" clause.

For the foregoing reasons, we reverse the Court of Appeals on the issue of whether the United policy was excess to other coverage available to Rosenmund.

In sum, the portion of the Court of Appeals' decision holding that reformation of the Liberty Mutual policies to provide Rosenmund with products liability coverage was appropriate remains undisturbed. We reverse the remainder of the Court of Appeals' decision and hold (1) that an "injury-in-fact" trigger of coverage is appropriate in this case, where the date of property damage is known and undisputed; (2) that there was a single occurrence triggering the 1 July 1991 to 1 July 1992 policy year; and (3) that the policy issued to Rosenmund by United is excess to the Liberty Mutual and International policies issued to Gaston and under which Rosenmund was an additional insured.

REVERSED.

Justice MARTIN did not participate in the consideration or decision of this case.