Duke Energy Carolinas, LLC v. AG Ins. SA/NV, 2020 NCBC 45.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 5594

DUKE ENERGY CAROLINAS, LLC
and DUKE ENERGY PROGRESS,
LLC,

              Plaintiffs,

v.

AG INSURANCE SA/NV (f/k/a
L'Etoile S.A. Belge d'Assurances); et
al.,

              Defendants.

**ORDER AND OPINION ON THE
CHUBB DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT
REGARDING TRIGGER OF
COVERAGE AND THE AEGIS
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT
REGARDING COVERAGE FOR THE
W.H. WEATHERSPOON STEAM
ELECTRIC PLANT**

      1.    **THIS MATTER** is before the Court on (i) the Chubb Defendants'[1] Motion for Partial Summary Judgment Regarding Trigger of Coverage (the "Chubb Defendants' Motion") filed November 26, 2019, (ECF No. 572), and (ii) the AEGIS Defendants'[2] Motion for Partial Summary Judgment Regarding Coverage for the W.H. Weatherspoon Steam Electric Plant (the "AEGIS Defendants' Motion," together with the Chubb Defendants' Motion, the "Motions") filed on November 27, 2019, (ECF No. 593).[3]

---

[1] The "Chubb Defendants" are Defendants Federal Insurance Company ("Federal"), Century Indemnity Company, as successor to CIGNA Specialty Insurance Company (f/k/a California Union Insurance Company), and Pacific Employers Insurance Company ("PEIC").

[2] The "AEGIS Defendants" are Defendants Associated Electric & Gas Insurance Services Limited ("AEGIS"), Berkshire Hathaway Direct Insurance Company (f/k/a American Centennial Insurance Company ("ACI")), and TIG Insurance Company, as successor to Ranger Insurance Company ("Ranger").

[3] The Chubb and AEGIS Defendants are referenced together herein as the "Moving Defendants."

2. Having considered the Motions, the materials submitted in support of and in opposition to the Motions, the arguments of counsel at the hearing on the Motions, and other appropriate matters of record, the Court hereby **DENIES** the Motions without prejudice to the Insurers' rights to renew the Motions after the completion of expert discovery.

*Pillsbury Winthrop Shaw Pittman LLP, by Matthew G. Jeweler, Mark J. Plumer, Barry Fleishman, Aaron D. Coombs, William C. Miller, and Jeffrey W. Mikoni, and Hunton & Williams LLP, by A. Todd Brown and Ryan G. Rich, for Plaintiffs Duke Energy Carolinas, LLC and Duke Energy Progress, LLC.*

*O'Melveny & Myers, LLP, by Jonathan Hacker and Bradley Garcia, White and Williams, LLP, by Shane Heskin and Eric Hermanson, Fitzgerald Litigation, by Andrew L. Fitzgerald, and Cohn Baughman & Martin, by Frank Slepicka, for Defendants Century Indemnity Company, Federal Insurance Company, and Pacific Employers Insurance Company.*

*Rivkin Radler LLP, by Alan S. Rutkin, George D. Kappus, Steven M. Zuckermann, Greg E. Mann, and Gregory J. Klubok, and Goldberg Segalla, by David G. Harris, II and David L. Brown, for Defendants Associated Electric and Gas Insurance Services Ltd., Berkshire Hathaway Direct Insurance Company, and TIG Insurance Company.*

*Hogan Lovells US LLP, by David Newmann and Alexander B. Bowerman, and McAngus Goudelock & Courie, PLLC, by Jeffrey Kuykendal, for Defendant Assurances Générales de France.*

*Freeborn & Peters LLP, by Bruce M. Engel, Patrick Frye, and Ryan G. Rudich, and Bradley Arant Boult Cummings LLP, by Matthew S. DeAntonio and Corby C. Anderson, for Defendant Arrowood Indemnity Company.*

*Saiber LLC, by Michael J. Balch, for Defendant General Reinsurance Corporation.*

*Clausen Miller P.C., by Ilene Korey and Amy R. Paulus, and Fox Rothschild LLP, by Jeffrey P. MacHarg, for Defendant Old Republic Insurance Company.*

*Kennedys CMK LLP, by John D. LaBarbera and Benjamin A. Blume, and James, McElroy & Diehl, P.A., by Adam L. Ross, for Defendant United States Fire Insurance Company.*

*Karbal Cohen Economou Silk Dunne LLC, by Dena Economou, and Shipman & Goodwin LLP, by James Ruggeri, for Defendants First State Insurance Company and Twin City Fire Insurance Company.*

*Squire Patton Boggs (US) LLP, by Paul Kalish and Eridania Perez, and McAngus Goudelock & Courie, by Jeffrey Kuykendal, for Defendants Allianz Global Risks US Insurance Company, Allianz Underwriters Insurance Company, and Fireman's Fund Insurance Company.*

*Jackson & Campbell PC, by Erin N. McGonagle, for Defendants AIG Property Casualty Company, American Home Assurance Company, and Lexington Insurance Company.*

*Hinkhouse Williams Walsh LLP, by William C. Joern and Richard McDermott, and Pope Aylward Sweeney & Stephenson, LLP, by Robert Aylward, for Defendant Continental Insurance Company.*

*Windels Marx Lane & Mittendorf LLP, by Eric J. Konecke, for Defendant Allstate Insurance Company.*

Bledsoe, Chief Judge.

I.

FACTUAL AND PROCEDURAL BACKGROUND

3. This action focuses on whether Defendants—all insurers who issued excess level insurance policies to Plaintiffs Duke Energy Carolinas, LLC ("DEC") (formerly Duke Power Company ("Duke Power")) and Duke Energy Progress, LLC ("DEP") (formerly Carolina Power & Light Company ("CP&L")) (collectively, "Duke")—are obligated to compensate Duke for alleged liabilities linked to coal combustion residuals ("CCRs"), i.e., coal ash, at fifteen Duke-owned power plants in North and South Carolina.

4. The Court does not make findings of fact on motions for summary judgment; rather, the Court summarizes material facts it considers to be uncontested. *Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142, 215 S.E.2d 162, 165 (1975).

5. DEC owns the Riverbend Steam Station ("Riverbend") near Mount Holly, Gaston County, North Carolina. The Riverbend plant was in operation from 1929 until 2013, and a coal ash pond was placed into service at Riverbend in 1957.[4]

6. DEP owns the W.H. Weatherspoon Steam Electric Plant ("Weatherspoon") near Lumberton, Robeson County, North Carolina. The Weatherspoon plant was in operation from 1949 until 2011, and a coal ash pond was placed into service at Weatherspoon sometime between 1949 and 1955.[5]

---

[4] (*See* Aff. Shane R. Heskin Supp. Mot. Partial Summ. J. Regarding Trigger Coverage [hereinafter "Heskin 1st Aff."] Ex. 1 Proposed Groundwater Assessment Work Plan, Riverbend Steam Station Ash Basin, dated December 30, 2014, at 4, ECF No. 573.1; Heskin 1st Aff. Ex. 2 Electric Power Research Institute's Review of the Groundwater Flow and Transport Model, Riverbend Steam Station, Gaston County, NC, dated February 5, 2016, at 1, ECF No. 573.2; Duke's Opp'n Defs.' Mot. Partial Summ. J. Regarding Trigger Coverage & Regarding Coverage W.H. Weatherspoon Steam Electric Plant [hereinafter "Duke's Opp'n Br."] Ex. 1 Excerpts Comprehensive Site Assessment Report – Riverbend Steam Station Ash Basin (Aug. 18, 2015), at ES-3, 16, ECF No. 662.1.)

[5] The parties appear to dispute the exact date coal ash pond operations began at Weatherspoon. The AEGIS Defendants rely on a Duke consultant's modeling report to contend that "[t]he Weatherspoon ash pond was placed into service in 1949" and that "January 1, 1950 is effectively the date the Weatherspoon ash pond was placed into service." (Mem. Law Supp. Mot. Partial Summ. J. Defs. AEGIS, Berkshire Hathaway Direct Ins. Co. (f/k/a ACI), & TIG Ins. Co., Successor to Ranger, Regarding Coverage W.H. Weatherspoon Steam Electric Plant 17 n.69 [hereinafter "AEGIS Defs.' Supp. Br."], ECF No. 594 (citing Aff. Greg E. Mann Supp. Mot. Partial Summ. J. AEGIS, Berkshire Hathaway Direct Ins. Co. (f/k/a ACI), & TIG Ins. Co., Successor to Ranger, Regarding Coverage W.H. Weatherspoon Steam Electric Plant [hereinafter "Mann Aff."] Ex. N Excerpts Report Entitled Groundwater Flow & Transport Modeling Report W.H. Weatherspoon Power Plaint, Lumberton, NC, dated October 28, 2015, at 12, ECF No. 596.14, Mann Aff. Ex. P Excerpts Report Entitled Updated Groundwater Flow & Transport Modeling Report W.H. Weatherspoon Power Plant, Lumberton, NC, dated May 30, 2017, at 15, ECF No. 596.16).) In contrast, Duke asserts that

7. The Moving and Joining Defendants[6] (collectively, the "Insurers") contend in the current Motions that they are entitled to judgment as a matter of law because Duke has admitted that the property damage Duke suffered at the Riverbend and Weatherspoon plants occurred when the ash ponds at those plants were placed in operation in the 1950s and the relevant policies only provide coverage for property damage occurring during the effective periods for those policies, which were in the late 1970s and early 1980s. (Joint Reply Br. AEGIS & Chubb Defs. Supp. Mots. Partial Summ. J. Regarding Trigger Coverage W.H. Weatherspoon Steam Electric Plant & Riverbend Steam Station Site 1–2, 16 [hereinafter "Joint Reply Br."], ECF No. 681.)

8. The Chubb Defendants' Motion concerns five policies the Chubb Defendants issued to Duke Power between 1979 and 1985 for the Riverbend site (the "Chubb

the Weatherspoon coal ash pond began operating around 1955, citing a different report stating that "[t]he ash basin was constructed in phases using a combination of basin excavation and earthen dike construction beginning in 1955." (Duke's Opp'n Br. 6 n.19 (citing Duke's Opp'n Br. Ex. 4 Comprehensive Site Assessment Report – W.H. Weatherspoon Power Plant (Aug. 5, 2015), at ES-vi, 6–7, ECF No. 662.1).)

[6] The Chubb Defendants' Motion was joined by the AEGIS Defendants, (ECF No. 607); Assurances Générales de France n/k/a Allianz IARD ("AGF"), (ECF No. 601); Old Republic Insurance Company ("Old Republic"), (ECF No. 605); The Continental Insurance Company for London Guarantee and Accident Company of New York ("Continental"), (ECF No. 608); Allianz Global Risks US Insurance Company (f/k/a Allianz Insurance Company), Allianz Underwriters Insurance Company (f/k/a Allianz Underwriters, Inc.), and Fireman's Fund Insurance Company ("FFIC"; collectively, the "Allianz Defendants"), (ECF No. 610); and Arrowood Indemnity Company (f/k/a Royal Indemnity Company) ("Arrowood"), (ECF No. 615). AGF and Old Republic filed separate papers in support of the Chubb Defendants' Motion. (ECF Nos. 601, 605.) The AEGIS Defendants' Motion was joined by Defendants FFIC, United States Fire Insurance Company ("U.S. Fire"), Federal, and PEIC. (ECF Nos. 611, 617, 619.) The Defendants joining the Chubb Defendants' and the AEGIS Defendants' Motions are referenced herein, collectively, as the "Joining Defendants."

Policies"),[7] (Certain Defs.' Mem. Law Supp. Mot. Partial Summ. J. Regarding Trigger Coverage 1–2 [hereinafter "Chubb Defs.' Supp. Br."], ECF No. 575), and numerous policies with similar language issued by certain Joining Defendants who have joined the Chubb Defendants' Motion.[8]  The AEGIS Defendants' Motion similarly concerns five policies the AEGIS Defendants issued to CP&L between 1981 and 1986 for the Weatherspoon plant (the "AEGIS Defendants' Policies," together with the Chubb Policies, the "Policies"),[9] (Mot. Partial Summ. J. AEGIS, Berkshire Hathaway Direct Ins. Co. (f/k/a ACI), & TIG Ins. Co., Successor to Ranger, Regarding Coverage W.H. Weatherspoon Steam Electric Plant 1, ECF No. 593), as well as several policies with similar language issued by certain Joining Defendants who have joined the AEGIS Defendants' Motion.[10]

9.     The Chubb Policies require the insurer "to indemnify . . . [t]he Insured against Ultimate Net Loss, which the Insured may sustain by reason of the liability imposed upon the Insured by law . . . for damages because of . . . property damage, caused by [an] occurrence." (Heskin 1st Aff. Ex. 8, at CEN000001–02, ECF No. 573.8; Heskin 1st Aff. Ex. 9 § I(a), ECF No. 573.9.)  Each of these Policies states that it "applies to occurrences anywhere which take place during the policy period[,]"

---

[7] The Chubb Policies at issue are listed at Appendix A.

[8] The Joining Defendants' policies at issue on the Chubb Defendants' Motion are listed at Appendix A.

[9] The AEGIS Defendants' Policies at issue are listed at Appendix A.

[10] The Joining Defendants' Policies at issue on the AEGIS Defendants' Motion are listed at Appendix A.

(Heskin 1st Aff. Ex. 9 § IV), and define an "occurrence" as "(1) an accident, or (2) event or continuous or repeated exposure to conditions which result in . . . physical damage to or destruction of tangible property, including loss of use[,]" (Heskin 1st Aff. Ex. 9 § III(f)). "Property damage" is defined as "physical injury to or destruction of tangible property which occurs during the policy period, including the loss or use thereof at any time resulting therefrom[.]" (Heskin 1st Aff. Ex. 9, at DUKE_CAIR_000000070.)

10. Similarly, under each of the AEGIS Defendants' Policies, the insurer must "indemnify . . . [t]he INSURED for any and all sums which the INSURED shall become legally obligated to pay as ULTIMATE NET LOSS . . . for damages because of . . . PROPERTY DAMAGE caused by an OCCURRENCE[.]") (*See* Mann Aff. Ex. D Stipulated Copy [ACI] Policy No. CC-00-26-13 § I(a), ECF No. 596.4.) Each of the AEGIS Defendants' Policies further provides that the "POLICY applies to OCCURRENCES . . . which take place anywhere during the POLICY PERIOD[,]" (Mann Aff. Ex. D § IV), and defines "occurrence," in relevant part, as "(1) an accident; or (2) an event; or (3) continuous or repeated exposure to conditions which results in . . . PROPERTY DAMAGE[,]" (Mann Aff. Ex. D § III(i)). The AEGIS Defendants' Policies define "property damage," in relevant part, as "physical injury to or destruction of tangible property which occurs during the POLICY PERIOD[.]" (Mann Aff. Ex. D § III(k).)

11. The Moving Defendants contend that the foregoing policy provisions make clear that coverage is only available under the Policies if they were in effect when covered property damage began. Relying on reports of Duke's groundwater

consultants and statements made in Duke's opposition brief, the Moving Defendants contend that Duke has acknowledged that the relevant property damage here began on the date the ash ponds were placed in operation—1950 for Weatherspoon and 1957 for Riverbend.  Because the Moving Defendants' Policies did not go into effect until 1979 and 1981, respectively, the Moving Defendants contend that the Policies at issue have not been triggered and thus cannot provide coverage.  (Chubb Defs.' Supp. Br. 3, 8–9; AEGIS Defs.' Supp. Br. 3, 17 n.69, 18; Joint Reply Br. 1–2.)

12.    Defendant AGF has joined in the Chubb Defendants' Motion but advances a separate argument to reach the same conclusion based on different language in AGF's insurance policy ("AGF Policy").[11]  (AGF's Supp. Br. 3, ECF No. 601.)

13.    The AGF Policy, through its incorporation of Lloyd's UGL 1333, provides that the insurer must "indemnify . . . the named Assured . . . for any and all sums which they shall be legally obligated to pay and shall pay . . . as damages . . . by reason of damage to or destruction of property, by reason of or resulting from any trade or business of the named Assured[.]"  (AGF's Supp. Br. Ex. 2 § I(a).)  The Limit of Liability provision in the AGF Policy limits coverage to the "ultimate net loss as a result of any occurrence covered under Insuring Agreement I(a)[.]"  (AGF's Supp. Br. Ex. 2 § II.)  The AGF Policy defines "occurrence" as "one happening or series of happenings arising out of or caused by one event taking place during the term of this

---

[11] The AGF Policy at issue on the Chubb Defendants' Motion is Combined Companies Policy No. 881/UGL 1333, (Mem. Law Supp. Joinder Def. AGF Certain Defs.' Mot. Partial Summ. J. Regarding Trigger Coverage [hereinafter "AGF's Supp. Br."] Ex. 1, ECF No. 601.2), which incorporates in part the terms and conditions of Lloyd's Policy No. 881/UGL 1333 ("Lloyd's UGL 1333"), (AGF's Supp. Br. Ex. 2, ECF No. 601.3).  *See* Appendix A.  The AGF Policy was issued for the period from 1975 until 1978.

contract[,]" (AGF's Supp. Br. Ex. 2, at MARSH-DEC-001065), which AGF contends requires "a discrete causative event during the policy term" for coverage to be reached, (AGF Supp. Br. 3). AGF asserts that Duke is unable to show that its alleged damages arise from one event during the 1975–78 policy period and thus that the AGF Policy has not been triggered. (AGF's Supp. Br. 3, Ex. 1, at MARSH-DEC-000675.)

14. Like AGF, Defendant Old Republic joined in the Chubb Defendants' Motion and advanced separate but similar arguments for dismissal based on the language in the policy it issued to Duke Power for the period from 1981 until 1982.[12] (Def. Old Republic Ins. Co.'s Mot. Partial Summ. J. Regarding Trigger Coverage (Joinder) 1–2, ECF No. 605.)

15. While opposing the Motions on their merits, Duke also argues under North Carolina Rule of Civil Procedure 56(f) that the Motions are premature because the parties have not yet completed expert discovery on the trigger of coverage issues that are the subject of the Motions. (Duke's Opp'n Br. 16–19, ECF No. 662; Duke's Opp'n Br. Ex. 12 Rule 56(f) Aff. Matthew G. Jeweler (Jan. 17, 2020) ¶¶ 5–8, ECF No. 662.1.) In particular, Duke contends that determining when "property damage" or an "injury in fact" occurs under the Policies requires determining "[w]hen and how often leaching and migration of CCR constituents impacted groundwater" at the two sites, (Duke's Opp'n Br. 2), and that the current record "does not contain evidence of when the leaching and migration processes commenced and/or subsequently took place at

[12] The Old Republic policy at issue on the Chubb Defendants' Motion is identified at Appendix A.

the Riverbend or Weatherspoon ash basins, or when those processes resulted in damage to groundwater," (Duke's Opp'n Br. 8). Duke asserts that the "complex scientific process through which constituents in the CCRs in Duke's ash basins leached and then migrated into the groundwater . . . including how it works, its timing, and when it resulted in damage to groundwater will be the subject of expert testimony in this case." (Duke's Opp'n Br. 6–7.) Duke therefore urges the Court to delay consideration of the Motions until expert discovery has been completed.

16.     After full briefing,[13] the Court held a hearing on the Motions on February 27, 2020 (the "Hearing"), at which Duke, the Chubb Defendants, the AEGIS Defendants, AGF, Old Republic, and the other appearing Defendants were represented by counsel. The Motions are now ripe for resolution.

II.

LEGAL STANDARD

17.     It is well established under North Carolina law that "summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Cabarrus Cty. Bd. of Educ. v. Dep't of State Treasurer*, 839 S.E.2d 814, 823–24 (N.C. 2020) (quoting N.C. R. Civ. P. 56(c)). "An issue is 'genuine' if it can be proven

---

[13] Duke filed a single brief in opposition to the Motions and the separate arguments of AGF and Old Republic. (ECF No. 662.) The Chubb and AEGIS Defendants filed a joint reply in support of the Motions, (ECF No. 681), in which Arrowood, Continental, the Allianz Defendants, and U.S. Fire joined, (ECF Nos. 693–94, 696, 698, 700). Defendants AGF and Old Republic each filed separate replies. (ECF Nos. 684, 699, 727.)

by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense." *McVicker v. Bogue Sound Yacht Club, Inc.*, 257 N.C. App. 69, 72, 809 S.E.2d 136, 139 (2017) (quoting *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . and means more than a scintilla or a permissible inference[.]" *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002) (citations and internal quotation marks omitted). "Evidence presented by the parties is viewed in the light most favorable to the non-movant." *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (citing *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000)).

18. The moving party bears the burden of showing that there is no genuine issue of material fact. *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002). This burden can be met either: "(1) 'by proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense'; or (2) 'by showing through discovery that the opposing party cannot produce evidence to support an essential element of [its] claim.' " *Strickland v. Lawrence*, 176 N.C. App. 656, 661, 627 S.E.2d 301, 305 (2006) (quoting *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835). If the moving party meets its burden, "the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784–85,

534 S.E.2d 660, 664 (2000); *see also* N.C. R. Civ. P. 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.").

III.

ANALYSIS

19. The Insurers contend that under the Policies, a qualifying "occurrence" and qualifying "property damage" must begin during the policy period for coverage to be triggered. The Insurers argue that this interpretation is compelled by the Supreme Court of North Carolina's decision in *Gaston County Dyeing Machine Co. v. Northfield Insurance Co.*, 351 N.C. 293, 524 S.E.2d 558 (2000), in which the Supreme Court interpreted the policy language at issue in that case to provide that "when . . . the accident that causes an injury-in-fact occurs on a date certain and all subsequent damages flow from the single event, there is but a single occurrence; and only policies on the risk on the date of the injury-causing event are triggered[,]" *id.* at 304, 524 S.E.2d at 565; (Chubb Defs.' Supp. Br. 2–4, 14–16; AEGIS Defs.' Supp. Br. 2–3, 7–9).

20. The Insurers further contend that the reports and testimony of two consultants Duke hired to complete groundwater modeling required under North Carolina's 2014 Coal Ash Management Act ("CAMA"), Dr. William Langley (Riverbend modeling lead) and Dr. Ronald Falta (Weatherspoon modeling lead), establish as a matter of law that groundwater contamination, and hence "property

damage" under the Policies (and "injury-in-fact" under *Gaston*), occurred at each site in the 1950s.[14]

21. The Insurers also point to Duke's statements in its opposition brief that groundwater "was continuously and repeatedly exposed to CCR constituents over the entire period of operation of the ash ponds[,]" (Duke's Opp'n Br. 5), and that "the damage to groundwater due to CCR constituents took place each year[,]" (Duke's Opp'n Br. 27), as confirmatory admissions that the first damage to groundwater or "injury-in-fact" at the Riverbend and Weatherspoon ash ponds occurred in the 1950s, (Joint Reply Br. 1–2).

22. Because the earliest Chubb Policy was issued in 1979 and the earliest AEGIS Defendant Policy was issued in 1981, the Insurers contend that Duke's alleged property damage (and "injury-in-fact" under *Gaston*) began long before the Policies were in effect, thereby precluding coverage. (Chubb Defs.' Supp. Br. 3; AEGIS Defs.' Supp. Br. 18.)

23. The Insurers' argument on the Motions therefore requires the Court to conclude as a matter of law that, applying *Gaston* as interpreted by the Insurers, the undisputed facts on the current record show (i) Duke's alleged "property damage" or

---

[14] (*See* Chubb Defs.' Supp. Br. 6–9; Heskin 1st Aff. Ex. 7 Excerpts Dep. Tr. William Langley, dated September 20, 2019, at 39–40, ECF No. 573.7; Heskin 1st Aff. Ex. 1, at 36; Heskin 1st Aff. Ex. 2, at Sections 1.2, 5.3, 4.10, Figures 17, 111; Heskin 1st Aff. Ex. 5 2017 Comprehensive Site Assessment Update for the Riverbend Steam Station, dated October 31, 2017, at DUKE_CAIR_006079777 *et seq.*, ECF No. 573.5; AEGIS Defs.' Supp. Br. 11–17; Mann Aff. Ex. K Excerpts Dep. Tr. Dr. Ronald Falta, Jr., Ph.D, dated January 31, 2019, at 83:2–3, 83:10–11, 85: 1–5, 86:16–87:9, ECF No. 596.11; Mann Aff. Ex. N, at 12–14; Mann Aff. Ex. O Excerpts Report Entitled "Proposed Groundwater Assessment Work Plan" W.H. Weatherspoon Power Plant, revised December 2014, at 50, ECF No. 596.15.)

"injury-in-fact" occurred on "date[s] certain" at Riverbend and Weatherspoon before the Policies incepted and (ii) Duke's subsequent damages all flowed from a "single event" at each site. The Court concludes that it cannot reach these conclusions on the current record.

24. Even if *Gaston* applies as the Insurers contend, the Insurers make too much of the reports and testimony of Duke's consultants on the Motion. Duke's evidence shows that Drs. Langley and Falta were tasked with modeling possible future groundwater impacts resulting from various potential ash pond closure plans.[15] To estimate future groundwater contamination, the consultants assumed, but did not verify or confirm, that groundwater contamination at Riverbend and Weatherspoon began on the day that each of the ash basins was placed in operation. (Falta Aff. ¶¶ 4–8; Langley Aff. ¶¶ 4–7.) Such assumptions about past groundwater contamination do not conclusively establish the date "property damage" or "injury-in-fact" occurred at either site, particularly given both consultants' affidavit testimony confirming that their assumptions were not intended to substitute for a rigorous investigation and determination of the commencement of groundwater contamination at either site. (Falta Aff. ¶ 8; Langley Aff. ¶ 6.) As such, this

---

[15] (*See* Duke's Opp'n Br. Ex. 6 Excerpts William G. Langley, Ph.D., P.E. Dep. Tr. (Sept. 20, 2019), at 86:16–87:2, 106:18–22, ECF No. 662.1; Duke's Opp'n Br. Ex. 8 Excerpts Ronald W. Falta, Jr. Dep. Tr. (Jan. 31, 2019), at 82:19–83:17, 84:1–85:5, 86:16–87:9, ECF No. 662.1; Duke's Opp'n Br. Ex. 9 Aff. Ronald W. Falta, Jr. (Jan. 15, 2020) ¶¶ 4–8 [hereinafter "Falta Aff."], ECF No. 662.1; Duke's Opp'n Br. Ex. 10 Aff. William G. Langley (Jan. 16, 2020) ¶¶ 4–7 [hereinafter "Langley Aff."], ECF No. 662.1; Duke's Opp'n Br. Ex. 11 Excerpts Groundwater Flow & Transport Modeling Report W.H. Weatherspoon Power Plant, Lumberton, NC (Oct. 28, 2015), at 17–18, ECF No. 662.1.)

evidentiary premise of the Motions cannot be sustained as a matter of law on the current record.

25. Similarly, Duke's statements in its opposition brief suggesting that groundwater was "continuously and repeatedly exposed to CCR constituents over the entire period of operation of the ash ponds[,]" (Duke's Opp'n Br. 5), are forecasts of evidence, not record evidence establishing undisputed facts. Even if the Court were to accept these forecasts as stipulations of fact as urged by the Moving Defendants, it appears that evidence to be developed through expert discovery may be relevant to the Court's determination of the issues raised by the Motions, including evidence concerning the causes of groundwater contamination at the two sites, the level of leached CCR constituents in each site's groundwater necessary to constitute "property damage" under the Policies, when alleged "property damage" first occurred at each site, and whether alleged "property damage" occurred once or on multiple occasions, all of which is the focus of ongoing expert discovery.

26. The Court therefore concludes that a determination of the Motions, including on the separate grounds advanced by AGF and Old Republic, may require consideration of expert testimony and is therefore premature. Accordingly, the Court concludes that the Motions should be denied at this time without prejudice to the Insurers' rights to renew the Motions after expert discovery is concluded.

IV.

CONCLUSION

27.    **WHEREFORE**, the Court, for the reasons stated above, hereby **DENIES**

the Chubb Defendants' Motion and the AEGIS Defendants' Motion without prejudice

to the Insurers' rights to renew either or both Motions after the completion of expert

discovery.[16]

**SO ORDERED**, this the 5th day of June, 2020.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge

---

[16] The Insurers objected at the Hearing to Duke's use of slides 6–12 of Duke's demonstrative exhibits for lack of an evidentiary foundation.  The Court sustains the Insurers' objection at this time and has not considered any of the information contained in those slides in its determination of the Motions.  The Court, however, will permit Duke an opportunity to provide such an evidentiary foundation in the event one or both Motions are renewed after the completion of expert discovery.

# APPENDIX A

## Policies at Issue on the Motions

Chubb Defendants' Policies

California Union Policy ZCX 00 38 58 (ECF No. 573.8)
California Union Policy ZCX 00 60 09 (ECF No. 573.10)
PEIC Policy XCC 00 23 83 (ECF No. 573.11)
Federal Policy (85) 7929-31-72 (ECF No. 573.13)
California Union Policy ZCX 00 74 50 (ECF No. 573.14)

AEGIS Defendants' Policies

ACI Policy No. CC-00-26-13 (ECF No. 596.4)
Ranger Policy No. EUL 300659 (ECF No. 596.5)
Ranger Policy No. EUL 300578 (ECF No. 596.6)
AEGIS Policy No. 211 CNJ (ECF No. 596.7)
Ranger Policy No. BSP 122048 (ECF No. 596.8)

Joining Defendants' Policies (Chubb Defendants' Motion)

Combined Companies Policy No. 881/UGL 1333 (ECF Nos. 601.2–.3)
Old Republic Policy No. OZX11486 (ECF No. 605.1)
AEGIS Policy No. 172 (ECF No. 591.7)
ACI Policy No. CC-00-12-63 (ECF No. 591.8)
ACI Policy No. CC-00-26-11 (ECF No. 591.9)
Ranger Policy No. BSP 122047 (ECF No. 591.10)
Ranger Policy No. 300658 (ECF No. 591.11)
Ranger Policy No. 300579 (ECF No. 591.12)
AEGIS Policy No. 209CNJ (ECF No. 591.13)
London Guarantee and Accident Company of New York Policy No. LX3278836[17]
London Guarantee and Accident Company of New York Policy No. LX1898119 (Heskin 2nd Aff. Ex. 51, ECF No. 578.6)
Allianz Underwriters, Inc. Policy No. AUX 5 20 05 14 (Heskin 2nd Aff. Ex. 7, ECF No. 578.1)
Allianz Insurance Company Policy No. XL 55 95 37 (Heskin 2nd Aff. Ex. 8, ECF No. 578.1)
FFIC Policy No. XLX-153 09 17 (Heskin 2nd Aff. Ex. 19, ECF No. 578.2)
FFIC Policy No. XLX-153 10 24 (Heskin 2nd Aff.. 20, ECF No. 578.2)
FFIC Policy No. XLX-168 70 03 (Heskin 2nd Aff. Ex. 21, ECF No. 578.3)

---

[17] (*See* Aff. Shane R. Heskin Supp. Defs.' Opp'n Pls.' Mot. Partial Summ. J. Regarding Scope Coverage & Conditional Cross-Mot. Partial Summ. J. Regarding Allocation [hereinafter "Heskin 2nd Aff."] Ex. 50, ECF No. 578.5.)

FFIC Policy No. XLX-168 70 08 (Heskin 2nd Aff. Ex. 22, ECF No. 578.3)
Royal Indemnity Company Policy No. EC 103320 (Heskin 2nd Aff. Ex. 12, ECF No. 578.2)

Joining Defendants' Policies (AEGIS Defendants' Motion)

FFIC Policy No. XLX-153 09 17 (Heskin 2nd Aff. Ex. 19, ECF No. 578.2)
U.S. Fire Policy No. 522 020271 6 (ECF No. 617.1)
PEIC Policy No. XCC 00 23 80 (Heskin 2nd Aff. Ex. 55, ECF No. 578.6)
PEIC Policy No. XCC 01 24 37 (Heskin 2nd Aff. Ex. 57, ECF No. 578.6)
Federal Policy No. (85) 7929-31-63 (Heskin 2nd Aff. Ex. 18, ECF No. 578.2)